BENNETT, Circuit Judge.
 

 The government appeals a judgment entered against it on October 23, 1984, by the United States Claims Court following its opinions in
 
 Passaro v. United States,
 
 4 Cl.Ct. 395 (1984), and 5 Cl.Ct. 754 (1984). The judgment awarded the widow of a military retiree an accrued annuity and future benefits under the Armed Forces Survivor Benefit Plan, Pub.L. No. 92-425, 86 Stat. 706-713 (1972).
 
 [1]
 
 The appeal presents narrow but significant issues of Claims Court jurisdiction and statutory interpretation. We vacate and remand.
 

 
 *457
 
 I
 

 The Survivor Benefit Plan (SBP) was enacted on September 21, 1972, to establish a new system of benefits for the survivors of military retirees, replacing the Retired Serviceman’s Family Protection Plan (RSFPP). The latter, a self-financing program permitting a service member to provide a percentage of his retired pay as an annuity for his survivors, had proved inadequate, being invoked by only 15 percent of the eligible military personnel.
 

 The SBP employed a new concept which made automatic the rights of survivors of military members who retired on or after September 21, 1972, unless the member affirmatively chose not to participate in the plan. If the member elected not to participate in the plan the statute required that his spouse be notified of the decision. Section 1448(a). This section also made an election not to participate in the plan irrevocable if not revoked before the date on which the member first became entitled to retired pay.
 

 Major Ramon Passaro, appellee’s husband, retired from the United States Army on November 1, 1968. He elected not to participate in the RSFPP, choosing instead to receive full retirement pay. Those who, like Major Passaro, had retired before the SBP became law were not, however, left out altogether. While it was provided in section 1455(3)(a) that the SBP applies “to any person who initially becomes entitled to retired or retainer pay on or after the effective date of this Act,” it was further provided in section 1455(3)(b) that “[a]ny person who is entitled to retired or retainer pay on the effective date of this Act may elect to participate in the Survivor Benefit Plan ... before the first anniversary of that date.”
 

 The Department of the Army contacted all service members who had previously retired and explained to them the benefits and procedures provided by the Survivor Benefit Plan. This was done on several occasions. A bulletin was first sent out describing the SBP. The bulletin was followed by a circular and then by a letter which included a form, which when filled out and returned would extend the benefits of the SBP to those who were already retired. A “final notice” provided a “box” to check on a postal card indicating the retiree’s intention. Major Passaro received these communications and affirmatively elected not to participate in the SBP by checking the box indicating his intention. He signed and dated the card on September 4, 1973, which was within the then-existing time limit for a binding answer.
 

 Four years after Major Passaro’s death, his widow inquired about survivor benefits and was told by the Army that her husband had elected to receive his full retirement pay rather than to provide her with a survivor’s annuity through reduced retirement pay. Her successful suit in the Claims Court and this appeal by the government followed.
 

 II
 

 The Claims Court agreed with Mrs. Pas-saro that the requirement that the spouse be notified of a nonelection of SBP benefits applies to service members who retired both before and after the effective date of the 1972 Act. The court, thus, assuming jurisdiction of a claim for money damages believed to be due, undertook to fashion an equitable remedy for Mrs. Passaro by deeming her late husband to be a member of the SBP. We think that the court exceeded its jurisdiction and misread the statute.
 

 The Claims Court reached its judgment by writing into the Act a notice requirement it does not have. Congress knew how to say whether a spouse should be notified of a nonelection of survivor benefits by the military member. Section 1448(a) required notification but section 1455(3)(a) specified that it applied to “any person who initially becomes entitled to retired or retainer pay on or after the effective date of this Act.” In other words, section 1448(a) applies to a service member who is automatically enrolled in the SBP because he retires on or after the effective
 
 *458
 
 date of the Act, September 21, 1972. Section 1448(a) reads in pertinent part:
 

 (a) The Plan applies to a person who is married or has a dependent child when he becomes entitled to retired or retainer pay unless he elects not to participate in the Plan before the first day for which he is eligible for that pay. If a person who is married elects not to participate in the Plan at the maximum level, that person’s spouse shall be notified of the decision.
 

 Thus, only a service member automatically enrolled by the Act could make an election not to participate before the first day for which he is eligible for retired or retainer pay. Those entitled to pay before September 21, 1972, were permitted by Congress to elect to participate rather than not to participate. The notice provision, therefore, does not apply to a service member who is already entitled to retired or retainer pay. No principle of statutory construction permits such a notice provision to be implied where it was excluded by Congress.
 

 Our views coincide with the administrative interpretation made and consistently applied in the 13 years since enactment of the SBA in 1972. Importantly, it agrees also with the intent of Congress which has amended the SBP five times and has never seen fit to alter the interpretation given administratively to the spousal notice provisions with respect to pre-SBP retirees.
 
 [2]
 
 This is persuasive evidence to support our interpretation of congressional intent in the matter.
 
 NLRB v. Bell Aerospace Co.,
 
 416 U.S. 267, 274-75, 94 S.Ct. 1757, 1761-62, 40 L.Ed.2d 134 (1974).
 

 The Claims Court has given weight to tangential remarks of two congressmen to support its interpretation of legislative history. We have carefully examined the entire legislative history including the statements alluded to and reach a contrary conclusion from the court below. There is no support for concluding that Congress meant to treat alike, for spousal notice purposes, those who retired both before and after enactment of the SBP. There is no statement in the hearings and congressional reports on this legislation suggesting that the United States would be liable to suit in money damages with respect to a claim by a widow of a pre-SBP retiree whose husband failed to enroll in the plan. Pertinent language of other committee members and the House and Senate Reports clearly differentiate between the pre-SBP retiree, and the service member yet to retire, on the points about spousal notice and election in and election out of the plan. Respectfully, the Claims Court has misread the record and the statute itself. We hold that the administrative interpretation has been both reasonable and correct. The court should have taken a less expansive view of the claim by inquiring whether the administrative interpretation of the law was reasonable rather than whether it was the interpretation the court would have desired.
 

 Ill
 

 The judgment below was premised on jurisdiction which did not exist. It was held that the Tucker Act, 28 U.S.C. § 1491 (1982), provided the necessary jurisdiction here and reliance was placed on the holding in
 
 Barber v. United States,
 
 676 F.2d 651, 230 Ct.Cl. 287 (1982). That case does not help Mrs. Passaro. In
 
 Barber,
 
 the claimant was the widow of a service member who, unlike Mrs. Passaro’s husband, retired after the enactment of the SBP and, therefore, was automatically enrolled in the plan. Sergeant Barber elected out of the plan on the eve of his retirement and no notice was given to his spouse as required by the statute. The Court of Claims held that Mrs. Barber thus had a Tucker Act claim for money due under a substantive right created by the SBA statute, as clarified by legislative history. Here, however, only an affirmative decision by Major Passaro to participate in the plan
 
 *459
 
 would create a vested interest in his widow upon his death. The factual and legal situations in the two cases are obviously dissimilar. Absent a presently due money claim, therefore, the Claims Court had no jurisdiction in the present case to fashion what it described as equitable relief. Equity, to the extent that it can be administered by the Claims Court, exists as an incident of general jurisdiction under the Tucker Act when that Act is invoked, as it has been here.
 
 Pauley Petroleum, Inc. v. United States,
 
 591 F.2d 1308, 1315-17, 219 Ct.Cl. 24 (1979),
 
 cert. denied,
 
 444 U.S. 898, 100 S.Ct. 206, 62 L.Ed.2d 133 (1979).
 

 We hold that nothing in the SBP statute expressly, or by implication, mandates that money damages are available as a remedy for the interpretation by the Army or other military departments that the SBP statute does not require notification of the spouses of pre-SBP retirees who failed or refused to participate in the plan.
 

 CONCLUSION
 

 The judgment of the Claims Court is vacated and the case is remanded to that court with the instruction that it dismiss this suit for lack of jurisdiction under the Tucker Act.
 

 VACATED and REMANDED.
 

 [1]
 

 . All section references herein are to the 1972 Act.
 

 [2]
 

 .
 
 See
 
 Pub.L. No. 94-496, 90 Stat. 2375 (1976); Pub.L. No. 95-397, 92 Stat. 843 (1978); Pub.L. No. 96-402, 94 Stat. 1705 (1980); Pub.L. No. 97-35, 95 Stat. 383 (1981); Pub.L. No. 97-252, 96 Stat. 718 (1982).