Fatmeh K. FILE, Plaintiff,

v.

UNITED STATES, Defendant.

No. 327–88C.

United States Claims Court.

Aug. 18, 1989.

Alan R. Thiele, Houston, Tex., for plaintiff.

James A. Kinsella, Washington, D.C., with whom was the Asst. Atty. Gen., for defendant.

## OPINION

HORN, Judge.

This case is presently before the court on a Motion to Dismiss for lack of subject matter jurisdiction, filed by the defendant, United States, on October 14, 1988. Based on the filings in this case, the oral argument on defendant's Motion to Dismiss and for the reasons discussed below, the court, hereby, GRANTS the defendant's Motion to Dismiss.

### Background

Plaintiff, a citizen of the United States, residing in Braidwood, Illinois, is the widow of United States Army Colonel (Retired) Kenneth File. Colonel (COL) File retired from the Army on July 18, 1968, after 27 years of service. Before retiring, COL File elected to participate in the Retired Servicemen's Family Protection Plan ("RSFPP"), naming his first wife, Wuanita File, as beneficiary. COL File and Wuanita File were divorced in October, 1968. COL File's divorce from his first wife acted to terminate his participation in the RSFPP. In March, 1969, COL File married the plaintiff, Fatmeh File. Fatmeh File was not an eligible beneficiary under the RSFPP. *See* 10 U.S.C. § 1435 (1982).

On September 21, 1972, Congress enacted the Survivor Benefit Plan ("SBP") to establish a new system of benefits for the survivors of military retirees. When enacted, section 1447 of the Survivor Benefit Plan, Pub.L. No. 92–425, 86 Stat. 706 (1972), defined a widow eligible under the program as: "the surviving wife of a person, who if not married to the person at the

time he became eligible for retired or retained pay—(A) was married to him for at least two years immediately before his death; or (B) is the mother of issue by that marriage." [1]

In order to inform retired servicemembers about the new plan, the Army devoted a special October 1972 issue of the "Retired Army Bulletin" to explaining the new SBP. This issue of the "Retired Army Bulletin" was published with the authorization of the Adjutant General of the United States Army and under the order of the Chief of Staff of the United States Army.[2] On page 2, the "Retired Army Bulletin" incorrectly defined a widow under the program as one who:

> [w]as married to the member on the date he became eligible for retired pay and was married to the member when he died; or [m]arried the member after his retirement, was married to such member for at least two years immediately before his death, *provided she is* the mother of issue by that marriage. (emphasis added).

On page 4 of the same "Retired Army Bulletin," "[t]he conditions under which an [a]nnuity is payable" are correctly set out and define an eligible spouse as one who is:

> "[m]arried to retiree at time of retirement; or [m]arried a minimum of two years at time of retiree's death if marriage occurred after retirement; *or* [t]he parent of issue from a marriage of less than two years which occurred following retirement...." (emphasis added).

Nowhere in this section on page 4 which defines eligibility for payment of an annuity does the term widow appear.

By using the words *"provided she is,"* on page 2 of the October 1972 issue of the "Retired Army Bulletin," plaintiff alleges that defendant, through the United States Army, incorrectly indicated to COL File that in order for Fatmeh File to be eligible for SBP benefits, she would have to be the parent of a child by COL File, which condition plaintiff could not meet because the plaintiff and COL File had no children together.

On August 10, 1973, COL File elected not to participate in the SBP retirement program. After making his election not to participate, COL File attempted to obtain more information about the SBP, by contacting the Retired Services Officer at the nearest Army installation, Ft. Sheridan, Illinois. At that time, he was told that there was no information to rely on except the October 1972 issue of the "Retired Army Bulletin". COL File died on June 18, 1979.

According to the complaint, sometime after COL File's death, on April 7, 1983, plaintiff wrote the United States Army Finance and Accounting Center at Fort Benjamin Harrison, Indiana, attempting to obtain SBP benefits. As shown in a letter attached to the complaint as an exhibit, on May 5, 1983, Major (MAJ) R.M. Zimmerman, Chief of the Pay Services Division, Retired Pay Operations, United States Army Finance and Accounting Center, responded to plaintiff's letter indicating that because COL File had elected not to enroll in the SBP annuity program, no annuity is payable to COL File's heirs, and thus plaintiff is ineligible to receive benefits. MAJ Zimmerman suggested that plaintiff could apply to the Army Board for Correction of Administrative Deficiencies if she felt that "there was sufficient evidence to substantiate" that COL File "did not make an election due to lack of information or misinformation concerning the SBP." According to plaintiff's complaint, on May 31, 1983, plaintiff requested that the case be transferred to the Army Board for Correction of Administrative Deficiencies. In response, on August 26, 1983, MAJ Zimmerman of the United States Army Finance and Accounting Center informed the plaintiff that her case should actually go to the Army

---

**1.** In 1976, Congress amended section 1447(3)(A) to read "was married to her for at least *one* year immediately before her death." Pub.L. No. 94–496, 90 Stat. 2375 (codified as amended at 10 U.S.C. § 1447 (1982)) (emphasis added).

**2.** According to counsel for the defendant the "Retired Army Bulletin" was routinely mailed to retired Army personnel along with their monthly retirement checks.

Board for Correction of Military Records ("ABCMR").

On June 27, 1984, plaintiff petitioned the ABCMR to obtain benefits under the SBP. On July 23, 1985, the ABCMR denied plaintiff's claim for relief.

On December 9, 1985, plaintiff petitioned the ABCMR under the Freedom of Information Act to determine the basis for the statement included by the ABCMR in their determination that "a minimum of seven notifications on the plan" had been mailed to COL File. After an incomplete response, plaintiff sent a second request to the ABCMR, in February, 1986, to determine the basis for the statement regarding the number of notifications sent to COL File. It was during a review of the documents received in response to this second request that plaintiff first discovered the error on page 2 of the October 1972 issue of the "Retired Army Bulletin."

Also according to the complaint, on August 31, 1986, plaintiff, upon discovery of the error on page 2 of the Bulletin, submitted to the ABCMR, a request for reconsideration of her case based upon the error. On September 2, 1987, the ABCMR officially denied plaintiff's request for reconsideration.

On June 1, 1988, plaintiff filed a complaint in this court alleging that the publication of the October 1972 issue of the "Retired Army Bulletin," which contained incorrect information in its definition of the term widow was "a grossly negligent act of affirmative misconduct." Plaintiff alleges that COL File elected not to participate in the SBP because he had been misled by the defendant's October, 1972 issue of the "Retired Army Bulletin."

Plaintiff requests that this court (1) direct the United States Army to declare the plaintiff eligible for benefits under the SBP from the time of the enactment of the SBP, until her death; and (2) grant judgment against the defendant for survivor benefits, payable under the SBP from June 18, 1979, the date of COL File's death, until plaintiff's death.

On October 14, 1988, defendant responded to the complaint by filing, pursuant to Rule 12 of the Rules of the United States Claims Court, RUSCC 12, 28 U.S.C. (Supp. IV 1986), a Motion to Dismiss for lack of jurisdiction. Defendant alleges (1) that the Claims Court does not have jurisdiction over this case under the Tucker Act, 28 U.S.C. § 1491 (1982); and (2) that this case is time barred by the six year statute of limitations, 28 U.S.C. § 2501 (1982).

## *Discussion*

The purpose of Rule 12(b) of the Rules of the United States Claims Court, RUSCC 12(b), 28 U.S.C. (Supp. IV 1986), is to promote the expeditious presentation of defenses and objections. On a motion under RUSCC 12(b), the court's inquiry essentially is limited to the content of the complaint.

When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the fact of the pleading that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Furthermore, the Supreme Court has stated that, when reviewing a motion to dismiss on the pleading, the court must accept the allegations in the complaint and supporting affidavits as true. *Garner v. Toilet Goods Ass'n*, 387 U.S. 167, 172, 87 S.Ct. 1526, 1529, 18 L.Ed.2d 704 (1967).

The first issue raised in defendant's motion is whether the United States Claims Court has jurisdiction to hear plaintiffs' claim. Plaintiff attempts to base her claim on the Tucker Act, 28 U.S.C. § 1491 (1982). Section 1491 provides in relevant part:

(a)(1) The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated damages in cases not sounding in tort.

*Id.* The Tucker Act is only a jurisdictional statute and does not in and of itself create any substantive rights. *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). A claim for damages under the Tucker Act, therefore, must be based upon a separate substantive right under law which entitles a party to money damages from the United States, provided for in the constitution, a statute or regulation or a contract. *United States v. Testan*, 424 U.S. at 400, 96 S.Ct. at 954 (citing *Eastport Steamship Corp. v. United States*, 372 F.2d 1002, 1007–09, 178 Ct.Cl. 599, 605–07 (1967)).

Defendant relies upon the decision issued by the United States Court of Appeals for the Federal Circuit in *Passaro v. United States*, 774 F.2d 456 (Fed.Cir.1985), *cert. denied*, 476 U.S. 1114, 106 S.Ct. 1969, 90 L.Ed.2d 653 (1986), as the authority for its position that this court lacks jurisdiction to hear plaintiff's case. In *Passaro*, the widow of a servicemember who retired before the enactment of the SBP, and who like COL File had elected not to participate in the SBP, sued to obtain SBP benefits. The United States Court of Appeals for the Federal Circuit held that the Claims Court lacked jurisdiction over Mrs. Passaro's claim. "[O]nly an affirmative decision by Major Passaro to participate in the plan would create a vested interest in his widow upon his death.... Absent a presently due money claim, therefore, the Claims Court had no jurisdiction in the present case to fashion what it described as equitable relief." *Id.* at 458–59.

The Federal Circuit distinguished cases involving servicemembers who retired after the enactment of the SBP, and who are automatically enrolled in the program, even without an affirmative election to participate, from servicemembers like MAJ Passaro and COL File who retired before the enactment of the SBP. *Id.* at 458. By distinguishing between these categories, the Federal Circuit designed a framework in which post-SBP retiree cases are governed by the precedent set in *Barber v. United States*, 676 F.2d 651, 230 Ct.Cl. 287 (1982), and pre-SBP retiree cases are governed by the *Passaro* decision. *Passaro v. United States*, 774 F.2d at 458–59.

■ COL File retired in 1968, four years prior to the enactment of the SBP. *Passaro*, therefore, is the controlling precedent in the case currently before the court. *Passaro* indicates that if a servicemember who retired before the enactment of the SBP does not affirmatively elect to participate in the SBP, his widow is not entitled to benefits under the SBP. Consequently, she would have to have an independently vested claim for money damages presently due under a statute in order for this court to have jurisdiction. According to *Passaro*, without a presently due money claim, the United States Claims Court does not have jurisdiction to hear plaintiff's claims. *Id.*[3]

---

**3.** The court also notes that under 10 U.S.C. § 1448(a) (1976), a decision not to elect to participate in the SBP is defined as "irrevocable if it is not revoked before the date on which the person first becomes entitled to retired or retainer pay." The statute also provides that the spouse of a person who elects not to participate in the SBP at the maximum level shall be notified of the decision. Plaintiff, Fatmeh File did not allege in her papers filed with the court that she was not notified of COL File's election, despite a discussion of the election issue on page 8 of defendant's Motion to Dismiss. The court, therefore, must conclude, absent any indication to the contrary, that plaintiff, Fatmeh File, received proper notification. In any event, whether such notification was received by plaintiff or not, since COL File retired before enactment of the SBP he did not become automatically enrolled in the plan as was the case for those who retired after the 1972 enactment date. Consequently his widow likewise had no vested right in the plan's benefits. *See Passaro v. United States*, 774 F.2d at 457–58 (section 1448(a) mandatory notification of spouse in event that retiree decides not to participate in the SBP program does not apply where serviceman had already retired when SPB program became effective).

Plaintiff suggests that the instant case can be distinguished from *Passaro.* Specifically, plaintiff claims that this court has jurisdiction to hear this case based upon two alternative theories. Plaintiff's first theory is that she is the third party beneficiary of a contractual relationship between Congress and the Army in which the Army was required to accurately inform its servicemembers about the SBP. Plaintiff's second theory is that plaintiff is due money for the unauthorized representations made to her husband by the special agent representatives of the Army, as the "agent" of Congress.

■ Plaintiff's theories, unfortunately, have no merit. The Supreme Court has mandated that for jurisdiction to vest in military pay cases there must be an independent statutory basis for such jurisdiction. "Preliminarily, it is to be observed that common-law rules governing private contracts have no place in the area of military pay. A soldier's entitlement to pay is dependent upon statutory right." *Bell v. United States,* 366 U.S. 393, 401, 81 S.Ct. 1230, 1235, 6 L.Ed.2d 365 (1961). Furthermore, the Federal Circuit has held that the "entitlement to retirement benefits must be determined by reference to the statute and regulations governing these benefits, rather than to ordinary contract principles." *Zucker v. United States,* 758 F.2d 637, 640 (Fed.Cir.1985) (citing *United States v. Larionoff,* 431 U.S. 864, 869, 97 S.Ct. 2150, 2154, 53 L.Ed.2d 48 (1977)), *cert. denied,* 474 U.S. 842, 106 S.Ct. 129, 88 L.Ed.2d 105 (1985); *see also Chu v. United States,* 773 F.2d 1226, 1229 (Fed.Cir.1985); *Shaw v. United States,* 640 F.2d 1254, 1260, 226 Ct.Cl. 240, 251 (1981). Given the clear requirements of the applicable law that entitlement to benefits such as those claimed by the plaintiff need to have a statuary basis, plaintiff cannot now be successful on either a contract or agency theory and the *Passaro* case is controlling in the case currently before this court.

Another issue raised by plaintiff in her supplemental brief, filed on July 10, 1989, is whether the government should be estopped from asserting this court's lack of jurisdiction over plaintiff's claim because of the misinformation provided to COL File by the United States Army on page 2 of the October 1972 issue of the "Retired Army Bulletin."

"[I]t is well settled that the government may not be estopped on the same terms as any other litigant." *Heckler v. Community Health Servs. of Crawford,* 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984). The courts' reluctance to apply equitable estoppel against the government evolves from the concept of sovereign immunity. "[A] waiver of the traditional sovereign immunity 'cannot be implied, but must be unequivocally expressed.'" *United States v. Testan,* 424 U.S. at 399, 96 S.Ct. at 953 (citing *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969); *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957)). Courts have traditionally believed that applying equitable estoppel against the government would interfere with policymaking and other necessary government functions. *See Schweiker v. Hansen,* 450 U.S. 785, 788, 101 S.Ct. 1468, 1470, 67 L.Ed.2d 685 (1981) (quoting *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 385, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947) (when applying estoppel courts have a duty "to observe the conditions defined by congress for charging the public treasury")); *American Surety Co. v. United States,* 112 F.2d 903, 906 (10th Cir.1940) (court rejected the estoppel theory when its application would thwart the public policy).

Although the Supreme Court has been reluctant to apply estoppel against the United States the Supreme Court has left open the possibility that there exist cases in which equitable estoppel may be exercised against the government. *Heckler v. Community Health Servs. of Crawford,* 467 U.S. at 60–61, 104 S.Ct. at 2224–25. This plaintiff, however, has not presented such a case to this court. In the present case, it is uncontested that the United States Army provided COL File and other servicemembers with a document containing both correct and incorrect information concerning the eligibility of servicemembers' spouses to receive SBP benefits. It is also undis-

puted that one of the necessary statutory preconditions for plaintiff's entitlement to an annuity under the provisions of the SBP has not been met. One of the statutory conditions established by Congress for a spouse to receive benefits under the SBP is that the servicemember must have affirmatively elected to participate in the annuity plan. 10 U.S.C. § 1448 (1982). COL File did not affirmatively elect to participate in the SBP, and, therefore, he did not fulfill the necessary statutory prerequisite to make this plaintiff eligible for benefits under the program.

In the past, the Federal Circuit Court held that good faith reliance on the statements of government officials is insufficient grounds to override the failure of a plaintiff to fulfill a statutory requirement. *Riggs v. Office of Personnel Management,* 709 F.2d 1486, 1488 (Fed.Cir.1983) (citing *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981)). In *Riggs,* the plaintiff's failure to meet a statutory precondition for disability benefits, *i.e.,* that the employee not be on active service, was found to bar his claim for such benefits for the period of time prior to his separation from active service. *Id.* at 1488–89. In the *Riggs* case, the plaintiff claimed that he had relied upon an erroneous ruling made by the Office of Personnel Management, and that he had stayed in his civil service position pending a favorable decision upon his claim for disability benefits. The Federal Circuit specifically rejected this estoppel argument, holding that the statutory conditions of 5 U.S.C. § 8345(b) (1982), requiring the removal from active status, had never been met, and therefore, estoppel would not apply in the *Riggs* case. *Riggs v. Office of Personnel Management,* 709 F.2d at 1488.

In a more recent case, *Richmond v. Office of Personnel Management,* 862 F.2d 294 (Fed.Cir.1988), *petition for cert. filed,* 57 U.S.L.W. 3814 (U.S. June 2, 1989) (No. 88–1943), the Federal Circuit held that the government can be estopped from asserting a statutory bar to disability benefits because Mr. Richmond was entitled to rely upon erroneous written information provided by United States Navy officials. The

majority in *Richmond* did not deal with the earlier decision in *Riggs,* although the dissent written by Judge Mayer, cited to the *Riggs* case as controlling and consistent with *Schweiker v. Hansen,* cited above. *Id.* at 301–02 (Mayer, J., dissenting). This court agrees that the analysis adopted in the previous cases, discussed above, *Schweiker v. Hansen, Riggs v. Office of Personnel Management* and the dissent in *Richmond v. Office of Personnel Management,* present a more defensible position.

The general rule is that those who deal with the government are expected to know the law and may not rely on the conduct of government agents contrary to the law. *Heckler v. Community Health Servs. of Crawford,* 467 U.S. at 63, 104 S.Ct. at 2225 (citing *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947)). Justice Holmes wrote: "Men must turn square corners when they deal with the Government." *Rock Island, Ark. & La. R.R. Co. v. United States,* 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920). In a case similar to the case at bar, *Mayer v. United States,* 201 Ct.Cl. 105 (1973), the Court of Claims held that the plaintiff, an Air Force Reserve Officer, is expected to be familiar with federal law.

> The provisions of the United States Code and subsection 1331(c) thereof were as readily accessible to plaintiff as to defendant and the terms of the retirement statutes were clearly reiterated in the Air Force retirement regulations. Plaintiff could have and should have familiarized himself with the statutory and regulatory retirement provisions. In any case, plaintiff cannot rely on the generalized statements of Air Force officials and the retirement brochure as to the prerequisites to retirement pay and thus estop the Government from denying such pay if the statute so requires.

*Id.* at 113–14 (citing *Montilla v. United States,* 457 F.2d 978, 198 Ct.Cl. 48 (1972)).

Although this court adopts the analysis and holding in *Riggs* and rejects the reasoning of the majority in *Richmond,* the case of COL File's widow can also be distinguished from the majority decision in *Rich-*

*mond* on several factual grounds. Specifically, with COL File, as in *Schweiker* and *Riggs*, failure to act as a result of erroneous government information caused the claimant not to qualify for an available benefit. In *Richmond*, however, it was an affirmative action by the claimant, who relied upon incorrect government advice, that resulted in forfeiture of a benefit the claimant had already been receiving and deprived the plaintiff of a legal right that had already vested. In *Schweiker* and *Riggs*, as well as in the instant case, the claimant had not "lost any legal right, either vested or contingent, or suffered any adverse change in its status." *Heckler v. Community Health Servs. of Crawford*, 467 U.S. at 61–62, 104 S.Ct. at 2225. Since the plaintiff in the case at bar, Fatmeh File, never had a legal right to receive SBP benefits, her claim can be distinguished from the claim at issue in the *Richmond* decision.

The instant case also can be distinguished further from the claim in *Richmond* based on the fact that "The Retired Army Bulletin," which COL File allegedly relied on to his detriment, included both the misleading information contained on page 2 and the correct information on page 4. The record indicates only one attempt by COL File to seek clarification, notably after he had already elected not to participate in the SPB. At that time, he inquired, Army personnel referred him back to "The Retired Army Bulletin."

Although the court is troubled by, and does not condone, the error contained on page 2 of the Bulletin, a common sense reading of the Bulletin as a whole should have lead a reader to conclude that the information on page 4, entitled "The conditions under which an Annuity is payable," was at least as important as the information contained on page 2. Moreover, the court notes that the statute upon which the Bulletin is based is clear and in accord with the information on page 4 of the Bulletin. Given the importance of the decision with which COL File was faced, a reasonable man should have sought clarification prior to making a final decision regarding pension benefits.

■ Furthermore, since COL File had also received page 4 of the Bulletin, it cannot be said that he was ignorant of the true facts which controlled his pension rights. Thus the third test set out by the court in *Richmond*, that the party on whom behalf estoppel is being asserted must be ignorant of the true facts, is not met in this case. *Richmond v. Office of Personnel Management*, 862 F.2d at 297. In the instant case, the burden was on COL File to ascertain the correct eligibility requirements for SBP benefits. The government should not be estopped in this case from asserting this court's lack of jurisdiction because of the information provided to COL File by the United States Army on page 2 of the Bulletin.

■ In its Motion to Dismiss, defendant asserts that plaintiff's claim is time barred by an applicable six year statute of limitations. The court agrees and finds that even assuming proper jurisdiction could be found to exist in this court, this plaintiff's claim would be time barred under the applicable six-year statute of limitations included in 28 U.S.C. § 2501 (1982). Section 2501 states in pertinent part: "Every claim of which the court of claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." *Id.*

The principle statute of limitations issue in this case involves the question of when the plaintiff's right of action first accrued. Defendant, in its Motion to Dismiss, alleges that the right of action first accrued at the time of COL File's death on June 18, 1979. Plaintiff claims that the right of action first accrued in July, 1985, when the ABCMR first denied plaintiff's request to correct COL File's military records to reflect his election to participate in the SBP.

It is well established that the initiation of a permissive administrative remedy does not toll the statute of limitations. *Bevelheimer v. United States*, 4 Cl.Ct. 558, 562 (1984) (citing *Camacho v. United States*, 494 F.2d 1363, 204 Ct.Cl. 248 (1974); *Ellis v. United States*, 1 Cl.Ct. 141 (1983)). An administrative remedy is permissive if it is

not mandated by Congress and it is not a prerequisite to bringing suit. *Bevelheimer v. United States*, 4 Cl.Ct. at 562.

There appears to be no statute or regulation requiring SBP claimants to pursue an administrative remedy before initiating court proceedings. Administrative remedies are not mentioned in either the SBP statutes, 10 U.S.C. §§ 1447–1455 (1982), or in their legislative history, S.Rep. No. 1089, 92nd Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Admin.News 3288. The ABCMR review in this case was therefore a permissive avenue of relief plaintiff chose to pursue. Plaintiff, by bringing her claim before the ABCMR, neither tolled the statute of limitations nor created a new cause of action. It must be concluded, therefore, that plaintiff's right of action first accrued on June 18, 1979, the date of COL File's death. *See Dean v. United States*, 10 Cl.Ct. 563, 568–69 (1986); *Warren v. United States*, 4 Cl.Ct. 552, 556, *aff'd mem.*, 746 F.2d 1489 (Fed.Cir.1984).

Applying the six-year limitations period to the accrual date of June 18, 1979, it is clear that the statute of limitations expired on June 18, 1985. Plaintiff's complaint was not filed until June 1, 1988. This case is, therefore, time barred by the statute of limitations in 28 U.S.C. § 2501 (1982), which requires that suits brought in the Claims Court be filed within six years of the date upon which the right of action first accrued.

Plaintiff claims, however, that even if the six year statute of limitations applies, the "continuing claim" doctrine should be applied in this case, to override any bar created by the applicable statute of limitations. More specifically, plaintiff contends that the claim in this case is a continuing one, which accrues during each pay period in which plaintiff does not receive SBP benefits. After consideration, this court finds that it is not able to accept plaintiff's assertion that the continuing claim doctrine applies to her claim for benefits under the SBP.

In *Freidman v. United States*, 310 F.2d 381, 159 Ct.Cl. 1 (1962), the Court of Claims set forth guidelines governing the applica-

tion of the continuing claim doctrine to military and civilian pay cases as follows:

> i.e., periodic pay claims arising more than six years prior to suit are barred, but not those arising within the six-year span even though the administrative refusal to pay the sum claimed may have occurred, or the statute on which the claim is grounded may have been enacted, prior to six years.... The important characteristics of all these cases were: (a) Congress had not entrusted an administrative officer or tribunal with the *determination* of the claimant's eligibility for the particular pay he sought; (b) the cases turned on pure issues of law or on specific issues of fact which the court was to decide for itself (i.e., Congress had not established any administrative tribunal to *decide* either the factual or the legal questions); and (c) in general the cases called upon the court to resolve sharp and narrow factual issues not demanding judicial evaluation of broad concepts such as "disability" (concepts which involve the weighing of numerous factors and considerations as well as the exercise of expertise and discretion).

*Id.* at 384–85, 159 Ct.Cl. at 7. Of particular note is the prescription in *Friedman* that courts should not apply the continuing claim doctrine to cases which call upon the court to resolve broad factual issues and concepts "(concepts which involve the weighing of numerous factors and considerations as well as the exercise of expertise and discretion)." *Id.* at 385, 159 Ct.Cl. at 7. In fact, according to *Freidman*, this doctrine was generally applied to suits "for additional pay at a higher grade or claiming greater compensation (under a statute or regulation) than the claimant was receiving, or selecting special statutory increments or allowances," *Id.* at 384, 159 Ct.Cl. at 7, not to retirement benefits. In limiting the application of the continuing claim doctrine, the *Friedman* court recognized that

> [o]ne of the prime objectives of the statute of limitations is to prevent factual issues from being tried too long after the events occurred—with witnesses dead or gone, records lost or destroyed, and

memories confused or dimmed—at a time when the past cannot be reconstructed with any pretense of accuracy.

*Id.* at 401, 159 Ct.Cl. at 34.

█ Assuming, *arguendo*, that this court were to adopt the plaintiff's application of the continuing claim doctrine to this case and proceed to a trial on the merits, for plaintiff to prevail, the court would have to determine a number of broad and difficult factual issues. *See Waite v. United States*, 230 Ct.Cl. 731, 734 (1982) (refusing to apply the continuing claim doctrine to claims for additional retirement pay because there existed a number of "disputed questions of fact"), *cert. denied*, 459 U.S. 1103, 103 S.Ct. 724, 74 L.Ed.2d 950 (1983). If this case were to go to trial the court would have to determine whether COL File was ignorant of the true facts, in light of the conflicting information contained on pages 2 and 4 of the Bulletin, whether COL File was actually misled by the October 1972 issue of "Retired Army Bulletin" and whether COL File would have elected to participate in the SBP program had he been made aware only of the correct eligibility criteria. Since SBP participation results in reduced retirement income for the former servicemember, it seems entirely possible in this case that COL File could have elected not to participate in the SBP, given the $99.77 which the Army informed him would be deducted monthly from his retirement pay if he chose to participate in the SBP. Unfortunately, COL File, who died in 1979 would be the best witness as to what he read, what he believed, and why he elected not to participate in the SBP. Without COL File's testimony, the court will be forced to make broad, and perhaps highly speculative factual determinations as to these issues.

This case presents exactly the type of situation which the Friedman court sought to avoid, a case in which the "the past cannot be reconstructed with any pretense of accuracy." *Friedman v. United States*, 310 F.2d at 401, 159 Ct.Cl. at 34. This court, therefore, concludes that plaintiff's case is an inappropriate candidate for the application of the continuing claim doctrine

and that the plaintiff's claim is barred by the statute of limitations.

### Conclusion

For the reasons stated above, the court, hereby, GRANTS the defendant's Motion to Dismiss. The Clerk of the Court is ordered to enter judgment dismissing the complaint in this action. No costs.

IT IS SO ORDERED.