**RALDEN PARTNERSHIP, Appellant,**

v.

**The UNITED STATES, Appellee.**

**No. 88–1269.**

United States Court of Appeals,
Federal Circuit.

Dec. 14, 1989.

Robert Allen Evers, Davis Wright & Jones, Washington, D.C., argued, for appellant. With him on the brief was David

Simon. Thomas A. Cocciardi, Davis Wright & Jones, Washington, D.C., of counsel.

Howard Lipper, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for appellee. With him on the brief, were John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director. Also on the brief, were Drew Moran, Asst. Gen. Counsel and Mary Willis Clarke, Atty. Advisor, U.S. Environmental Agency, Washington, D.C., of counsel.

Before BISSELL and ARCHER, Circuit Judges, and BENNETT, Senior Circuit Judge.

ARCHER, Circuit Judge.

Ralden Partnership (Ralden) appeals the decision of the Interior Board of Contract Appeals (Board) dated July 1, 1987, IBCA No. 2116, which became final by Order of the Board on December 1, 1987, holding that Ralden is not entitled to, and must repay to the United States (government), the rents received in 1981–1985 under Lease No. HSM–110–69–281 and Supplement Lease Agreements (SLAs) to the extent such rents exceeded the limitation in section 322 of the Economy Act of 1932, 40 U.S.C. § 278a (1982). We affirm.

I

The decision of the Board was based on undisputed facts. Ralden's predecessor in interest, beginning in late 1969 or early 1970, constructed a facility in North Carolina, called the National Air Pollution Control facility, which was leased to the United States and occupied by the Environmental Protection Agency. Following the execution of the original lease, additions and modifications were made to the facility and leased to the United States under SLAs. SLA 8 was entered into in April, 1981 and provided for the construction of an additional building and for certain modifications to the existing facility. In SLA 8 it

was "estimated that this construction will be completed and that the Government will begin occupancy on or before October 1, 1981." Although rent commenced in September 1981, the new premises were not occupied until sometime after October 1, 1981.

One of the provisions of the original lease, contained in paragraph 14 of the General Provisions and Instructions, stated:

14. Economy Act Limitation

If the rental specified in this lease exceeds $2,000 per annum, the limitation of Section 322 of the Economy Act of 1932, as amended (40 U.S.C. 278a), shall apply.

SLA 8 similarly provided:

4. However, the rental of $496,000 ... shall be reduced if the appraisals required by the Economy Act of 1932 indicate that the rental exceeds the maximum Economy Act limitations....

Section 322 of the Economy Act of 1932 contains the following limitation on the rent that the United States can pay for leased buildings:

On and after June 30, 1932, no appropriation shall be obligated or expended for the rent of any building or part of a building to be occupied for Government purposes at a rental in excess of the per annum rate of 15 per centum of the fair market value of the rented premises at date of the lease under which the premises are to be occupied by the Government ...: *Provided,* That the provisions of this section shall not apply to leases made prior to June 30, 1932....

40 U.S.C. § 278a. The total rent paid to Ralden in 1981–1985 pursuant to the lease and SLAs exceeded the limitation of the Economy Act.

Public Law 97–51, effective October 1, 1981, contained a provision that effectively suspended section 322 of the Economy Act for the fiscal year 1982.[1] Pub.L. No. 97–

---

1. Public Law 97–51, a Congressional resolution for continuing appropriations for the fiscal year 1982, made applicable a provision of House Bill

H.R. 4121, which suspended section 322 of the Economy Act of 1932.

51, § 101(a)(3), 95 Stat. 958, 958–59 (1981). The suspension provision reads:

> Funds made available by this or any other Act for the payment of rent shall be available for the purpose of leasing space without regard to Section 322 of the Act of June 30, 1932, as amended (40 U.S.C. 278a).

Congress continued this suspension for the fiscal year 1983, *see* Pub.L. No. 97–377, § 101(a)(1), 96 Stat. 1830, 1830 (1982), and then made it permanent for fiscal years after 1983, *see* Pub.L. No. 98–151, § 101(f), 97 Stat. 964, 973 (1983).[2]

The contracting officer, in a final decision dated November 27, 1985, applied the Economy Act limitation to the government's lease payments for the facility, including payments under SLA 8. This decision required Ralden to repay $694,513.53 to the government representing lease payments exceeding the Economy Act limitation in the years 1981–1985. Ralden appealed the contracting officer's decision to the Board.

The Board recognized that Public Law 97–51 suspended the Economy Act as of October 1, 1981. It held, however, that the limitation contained in the Economy Act continued to apply to lease payments after the effective date of Public Law 97–51 if made pursuant to a lease agreement entered into before that date. Ralden appealed.

## II

A. It is beyond dispute that the lease agreement, including SLA 8, entered into by the parties incorporates section 322 as an upper limit on the amount of rent Ralden is entitled to receive. The pertinent clauses of the lease and SLA 8 both provide that section 322 "shall" apply to limit the maximum rent the government is obligated to pay. Accordingly, the sole issue to be decided in this appeal is whether the rent ceiling provided for in the lease agreement was affected, either pursuant to the terms of the lease agreement or by Congressional mandate, by the subsequent passage of Public Laws 97–51, 97–377, or 98–151.

Ralden asserts that the Board erred by failing to construe Public Law 97–51 as applying to rental payments received after its effective date and without regard to when the lease was executed. It argues that because the Economy Act as originally enacted contained an express exemption for pre-existing leases while Public Law 97–51 did not, Congress must have intended that the latter would apply to all outstanding, as well as future, leases.

The government argues that the suspension of the Economy Act was enacted to enable the United States to obtain *new* rental space at competitive rates and that the suspension did not affect rental payments under leases already in existence. The government also notes that Congress twice reenacted the suspension provision without significant change after the General Services Administration (GSA), the agency primarily responsible for leasing space for the United States, had interpreted the suspension provision as applying only to leases executed after the effective date of Public Law 97–51. According to the government, this indicates Congressional acquiescence.

B. We are unpersuaded by Ralden's arguments that the Board erred in its holding that Ralden must repay to the government those monies it received under the lease agreement and SLAs which exceeded the maximum amount allowed by section 322 of the Economy Act.

 The primary objective of contract interpretation is to ascertain the intent of the parties at the time they entered into the contract. *Beta Sys. v. United States*, 838 F.2d 1179, 1185 (Fed.Cir.1988); *Firestone Tire & Rubber Co. v. United States*, 444 F.2d 547, 551, 195 Ct.Cl. 21 (1971). The facts stipulated by the parties contain no extrinsic evidence pertinent to the intent and meaning of the contract, leaving us with nothing to consider except the lan-

---

2. Public law 98–151 made applicable a provision of House Bill H.R. 4139 which changed the language of Public law 97–51 slightly to read: "Funds ... shall be *hereafter* available...." (Emphasis added.)

guage of the agreement. It is obvious, however, from the absence of any provision in either the original lease agreement or SLA 8 concerning any future repeal, amendment, or suspension of section 322 that the parties fully intended that section 322, as it then existed, apply to limit the government's fiscal liability under the contract.[3] The parties bargained for and agreed upon the maximum price the government would pay under the lease agreement. Accordingly, Ralden cannot now assert that it should benefit, under the terms of the contract, from these later enactments. It agreed to abide by the stated limits of the Economy Act and, unless Congress has mandated otherwise, it must continue to do so. A contrary holding would not be consistent with the government's intent, or Ralden's intent, in entering into the contract.[4]

■ Congress gave no indication, either by the language of Public Laws 97–51, 97–377, or 98–151, or by the legislative history to those laws that it intended to alter existing contractual agreements between the government and its landlords. Accordingly, since legislation is presumed to operate in the future, rather than retroactively, absent a clear indication to the contrary, see *Alyeska Pipeline Serv. Co. v. United States*, 624 F.2d 1005, 1013, 224 Ct.Cl. 240 (1980), we perceive no error in the Board's conclusion that the suspension of section 322 has only prospective effect.

The language of the suspending legislation states that "[f]unds ... shall be available [or, hereafter available] for the purpose of leasing space without regard to Section 322 of the Act of June 30,

1932...." While this language might be susceptible to the interpretation Ralden advocates, Ralden's burden on appeal is to show that the interpretation of the statute given by the GSA is unreasonable. *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969) (the interpretation of a statute by an agency charged with its administration "should be followed unless there are compelling indications that it is wrong"); *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–802, 13 L.Ed.2d 616 (1965); *Springfield Indus. Corp. v. United States*, 842 F.2d 1284, 1285 (Fed.Cir.1988); *Horner v. Andrzjewski*, 811 F.2d 571, 574 (Fed. Cir.), *cert. denied*, 484 U.S. 912, 108 S.Ct. 257, 98 L.Ed.2d 215 (1987); *Nabisco, Inc. v. United States*, 599 F.2d 415, 422, 220 Ct.Cl. 332 (1979).

The Board noted that

[t]he General Services Administration ... interpreted [Public Law 97–51] to exempt from the Economy Act rental limitation, any lease contract awarded on or after October 1, 1981, while leases awarded prior to October 1, 1981, were subject to the limitation even if the lease term did not begin until after October 1, 1981. The determining factor for applicability of the Economy Act ... 'is the *award* date, not the commencement of the lease term'.

(Quoting a memorandum dated October 13, 1981, from the Acting Commissioner of Public Buildings to All Regional Administrators).

The interpretation given the suspension provision by GSA is supported by the Con-

---

3. Although the original contract stated that "the limitation of Section 322 of the Economy Act of 1932, *as amended* (40 U.S.C. 278a), shall apply" (emphasis added), this does not indicate that the parties intended to incorporate future enactments regarding section 322 into the contract. The phrase "as amended" is a common legal notation used to reference a particular statute in its amended form. *See* The Harvard Law Review Ass'n, A Uniform System of Citation, Rule 12.2.2, pp. 56–57 (14th ed.1986). In this particular case, the notation "as amended" was necessary to include a 1933 amendment to section 322 which added the clause *"Provided further, That the provisions of this section as applicable to rentals, shall apply only where the rental to*

be paid shall exceed $2000 per annum." *See* Act of Mar. 3, 1933, c. 212, Title II, § 15, 47 Stat. 1517.

4. Even if the parties were "mistaken" about the future applicability of Section 322, such a mistake in judgment is not the type of mistake which will support a claim for reformation of the contract. *Tony Downs Foods Co. v. United States*, 530 F.2d 367, 373, 209 Ct.Cl. 31 (1976) (a failure to predict future recission of President's price freeze is not a mistake correctable by reformation of contract); Restatement (Second) of Contracts § 151 comment a (1979).

gressional scheme by which the limitation of section 322 was suspended. Public Law 97–51 was signed into law on October 1, 1981 as part of a continuing budget resolution for fiscal year 1982 and suspended further application of section 322 of the Economy Act as of October 1, 1981. The suspension was continued for fiscal year 1983, Pub.L. No. 97–377, and was made permanent in fiscal year 1984, Pub.L. No. 98–151. Prior to the second of these suspensions, GSA interpreted the new law as applying only to leases entered into on or after October 1, 1981.[5] Thus, it can be inferred that Congress acquiesced in and ratified GSA's interpretation of the statute when it twice reenacted the suspension without any changes in the text of the statute except to make it permanent. *See NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 275, 94 S.Ct. 1757, 1762, 40 L.Ed.2d 134 (1974); *Passaro v. United States*, 774 F.2d 456, 458 (Fed.Cir.1985).

Finally, we are unpersuaded by Ralden's argument that because the Economy Act when first enacted expressly provided that existing leases would not be subject to the cap, the suspension provision, which contained no similar exception, should apply to existing leases. What happened when section 322 was enacted in 1932 gives no indication of congressional intention in 1981.

Because the provisions of Ralden's lease agreement and SLAs do not indicate that a suspension of the Economy Act would affect the limitations on rental payments, and because neither the language nor history of Public Laws 97–51, 97–377, and 98–151 mandates a change in existing lease agreements, we affirm the decision of the Board.

AFFIRMED.

---

5. We note that the General Services Board of Contract Appeals has held on three occasions that the suspension provision should not apply retroactively to existing leases. *See L.S.S. Leasing Corp.*, GSBCA Nos. 6551, 6552, 7077, 84–1 BCA ¶ 17,059 (1984); *American Nat'l Bank of Chicago*, GSBCA No. 7457, 85–1 BCA ¶ 17,811 (1985); *Northwestern Dev. Co.*, GSBCA Nos. 6821, 7433, 84–3 BCA ¶ 17,613 (1984). Subsequent to these decisions Congress reconfirmed the permanency of the suspension provision, without making any change, on December 22, 1987. *See* Pub.L. No. 100–202, § 106, 101 Stat. 1329, 1329–433 (1987) (providing that suspension provision of Public Law 98–151 "shall ... be effective as if enacted into law.").