**Harry I. GOODLEY**

v.

**The UNITED STATES.**

**No. 113–70.**

United States Court of Claims.

May 14, 1971.

Harry I. Goodley, pro se.

Arthur E. Fay, Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COWEN, Chief Judge:

In this case, which comes before us on defendant's motion for summary judgment and plaintiff's opposition thereto, the facts that are material to a decision of the questions of law presented are not disputed.

Plaintiff, a citizen of the United States, was born on April 17, 1907. He served on active and inactive duty as a member of the National Guard of the United States from March 9, 1936 to March 8, 1939, as a temporary member of the United States Coast Guard Reserve from January 5, 1944 to September 30, 1945, as a member of the United States Navy Reserve from September 8, 1947 to August 25, 1955, and as a member of the United States Air Force Reserve from August 26, 1955 to August 25, 1961. Thereafter, on May 2, 1962, he re-enlisted in the Air Force Reserve and served there until October 31, 1968. He was placed in the Air Force Retired Reserve on November 1, 1968, as a Reserve member who "is not eligible for retired pay."

On August 18, 1969, plaintiff applied to the Air Force Board for Correction of Military Records to correct his records to show his entitlement to longevity retirement pay under the provisions of 10 U.S.C. §§ 1331 and 1332 (1964). His application was denied by the Correction Board on December 1, 1969, and he brought this suit to recover retired pay from November 1, 1968. He served 140 non-consecutive days of active service as a temporary member of the Coast Guard Reserve, where he was assigned to the Voluntary Port Security Force, 11th Naval District. He claims that such service should be counted in computing his service for longevity retired pay pursuant to 10 U.S.C. § 1331(c).

The applicable statutes are Title III of the Act of June 29, 1948, 62 Stat. 1087, as amended by the Act of August 10, 1956, 70A Stat. 102 and now codified in the following pertinent provisions of 10 U.S.C. §§ 1331 and 1332:

§ 1331. *Age and service requirements.*

(a) * * *, a person is entitled, upon application, to retired pay computed under section 1401 of this title, if—

(1) he is at least 60 years of age;

(2) he has performed at least 20 years of service computed under section 1332 of this title;

\* \* \* \* \* \*

(c) No person who, before August 16, 1945, was a Reserve of an armed force, or a member of the Army without component or other category covered by section 1332(a) (1) of this title except a regular component, is eligible for retired pay under this chapter, unless he performed active duty after April 5, 1917, and before November 12, 1918, or after September 8, 1940, and before January 1, 1947, or unless he performed active duty (other than for training) after June 26, 1950, and before July 28, 1953. \* \* \*.

**§ 1332.** *Computation of years of service in determining entitlement to retired pay.*

(a) Except as provided in subsection (b), for the purpose of determining whether a person is entitled to retired pay under section 1331 of this title, his years of service are computed by adding—

\* \* \* \* \* \*

(b) The following service may not be counted under subsection (a):

\* \* \* \* \* \*

(7) Service in any status other than that as a commissioned officer, warrant officer, nurse, flight officer, appointed aviation cadet, or enlisted member \* \* \*.

It is quite clear from the statutory provisions quoted above that one who was a member of the Reserve prior to August 16, 1945, is not eligible for retired pay for non-regular service at age 60 unless he performed active duty in World War I, World War II, or the Korean conflict.

For the purpose of computing years of service that entitles one to retired pay, subsection (b) (7) of section 1332 specifically excludes service "in any status other than as a commissioned officer, warrant officer, nurse, flight officer,

appointed aviation cadet, or enlisted member \* \* \*."

For the reasons hereinafter stated, we hold that plaintiff's service as an enrolled temporary member of the Coast Guard Reserve was not service on active duty as an enlisted member or in any other of the capacities mentioned in the statute.

Plaintiff was not enlisted in the Coast Guard Reserve; instead, he was enrolled as a temporary member of the Reserve and when his service terminated on September 30, 1945, he was issued a certificate of disenrollment.

In Mitchell v. Cohen, 333 U.S. 411, 68 S.Ct. 518, 92 L.Ed. 774 (1948), the Supreme Court held that those who served temporarily on a part-time basis as enrolled members of the Coast Guard Reserve, Volunteer Port Security Force, are not "ex-servicemen" within the meaning of the Veterans' Preference Act of 1944, 58 Stat. 387. In that case, the Supreme Court pointed out many differences between the type of service performed by members of the Volunteer Port Security Force and the services of others on a full-time active basis with military pay and allowances. The enrolled members of the Coast Guard Reserve were subject to the Selective Service and Training Act of 1940, were required to register, and were liable for induction into the regular Armed Forces. They could be members of other naval or military organizations, and the law provided that they would be released from enrollment if called to duty by another organization (55 Stat. 12, § 208). They were obligated to be on active duty as directed for a minimum of 12 hours a week and, because of this limited service, most of them were able to continue their regular civilian employment with little or no interference. They could not be transferred from the cities where they lived without their consent. They could also be excused from duty if they found it temporarily inconvenient. They performed their duties without pay, but they received an

allowance for uniforms and, in some cases, for food and subsistence while on active duty. If they were killed or injured in the line of duty, they were entitled only to the benefits provided by law for civilian employees of the United States.

Relying on *Cohen*, the Comptroller General issued a decision on August 4, 1949, in which he held that temporary members of the Coast Guard Reserve did not have the status of commissioned officers, warrant officers, flight officers, or enlisted persons within the purview of Section 302(a) of the Act of June 29, 1948. 29 Comp.Gen. 59 (1949). Subsequently, on March 29, 1956, the Comptroller General also ruled that civil service employees of the Coast Guard, who were temporarily enrolled in the Coast Guard Reserve, may not be regarded as persons in the military service within the meaning of the Soldiers and Sailors Civil Relief Act of 1940, 50 U.S.C., App. 501 et seq. 35 Comp.Gen. 527 (1956).

Senate Report No. 1977 on H.R. 2292, 87th Cong., 2d Sess. (1962), which was enacted as Public Law 87–704 on September 27, 1962, 76 Stat. 632, shows that Congress was advised at that time by the Comptroller General of his decision of March 29, 1956, and of the decision of the Supreme Court in Mitchell v. Cohen, *supra*. The Senate Report also shows that Congress recognized that temporary members of the Coast Guard Reserve did not perform the same type of service for which an honorable discharge is normally issued. The report states in part:

> We do agree that the services rendered by at least the great majority of the temporary reservists were on a different plane than that of the soldiers, sailors, and so forth, who were regularly inducted into the military services on a full-time basis.

The 1962 statute authorized the Secretary of the Treasury to issue certificates of honorable service to those who had served as temporary members of the United States Coast Guard Reserve during World War II and were disenrolled under honorable circumstances. Plaintiff received such a certificate. However, as the Senate Report stated, the act specifically provides that the certificates of honorable service do not entitle the recipients to any rights, privileges or benefits under any law of the United States.

■■ Plaintiff's principal argument that, since he was serving in the United States Navy Reserve when the Act of June 29, 1948, was passed, Section 1331 of 10 U.S.C. is void insofar as it "excludes plaintiff from the benefits of retired pay, while he was still serving under an enlistment contract in the Reserves." The difficulty with plaintiff's position is that it collides with the well established legal principle that there is no vested or contractual right to retired pay, which is dependent upon statutory right rather than upon common law rules governing private contracts. Andrews v. United States, 175 Ct.Cl. 561 (1966) and cases cited therein. Until the passage of the Act of June 29, 1948, there was no law which provided longevity retirement pay for members of the Reserves. (U.S.Code Cong. Service (1948), Vol. 2, pp. 2165–2166.) Therefore, we cannot agree that the enactment of that statute violated any vested right of the plaintiff.

It appears that plaintiff has served long and honorably in several components of the Armed Forces. Unfortunately, for his claim here, however, the applicable law excludes his service as a temporary member of the Coast Guard Reserve in counting the periods of service that would entitle him to longevity retired pay. As this court said in Abbott v. United States, 287 F.2d 573, 576, 152 Ct.Cl. 798, 804, cert. denied, 368 U.S. 915, 82 S.Ct. 192, 7 L.Ed.2d 130 (1961)—

> The status of retirement for military personnel and the right to and the amount of retired and retirement pay are created and controlled by statute. If there is no statutory authori-

zation for payment then the claimant is not entitled to any payment as a matter of right. * * *

It follows from the foregoing that we must reject plaintiff's contention that the action of the Air Force Board for Correction of Military Records was arbitrary, capricious, and contrary to the applicable laws and regulations. Defendant's motion for summary judgment is granted and plaintiff's petition is dismissed.