Cowen, Chief Judge,
delivered the opinion of the court:
This action for military retirement pay (non-disability) is before the court on plaintiff’s motion and defendant’s cross motion for summary judgment. Plaintiff, an officer in the United States Air Force Reserve (USAFR), attained the age of sixty years on October 30, 1968. By that time he had completed more than 20 years of Federal military service. The question before the court is whether plaintiff is entitled to military retirement pay under the terms of 10 U.S.C. §§ 1331 and 1332. Specifically, the question is whether plaintiff, notwithstanding the fact that he has satisfied the minimum age and length of service prerequisites to retirement pay of 10 U.S.C. § 1331(a), is nonetheless precluded from receiving retirement pay because he never performed any period of active duty as a member of the armed forces during the statutory dates of World War I, World War II, or the Korean Conflict as required by 10 U.S.C. § 1331(c).
The material facts of this case are not in dispute. The plaintiff, Rollins H. Mayer, was bom October 30, 1908. On September 3,1925, he enlisted in the Naval Reserve, and remained an active member of that organization until June 22, 1928. During the period of his service as an enlisted naval reservist, he performed a tour of active duty for training from August 20 through September 3, 1927. On June 22, 1928, plaintiff was honorably discharged from the Naval Reserve so that he could accept an appointment to the United States Naval Academy at Annapolis, Maryland, as a midshipman. Plaintiff graduated from the Naval Academy on June 1, 1932, was commissioned as an ensign in the United States Navy, and entered onto a tour of extended active duty as of June 2, 1932. Plaintiff was honorably discharged from the Navy on July 13,1937, after his non-selection for *108 promotion to the rank of lieutenant, junior grade. Pie retained no Reserve affiliation.
During the Second World War, plaintiff was not a member of any Reserve or active duty component of the armed forces. In December 1944, the United States Army Air Force requested that plaintiff’s then civilian employer grant plaintiff a leave of absence so that the Air Force could employ plaintiff, who possessed considerable expertise in the field of communications engineering, in a special civilian wartime assignment. The request was granted, and plaintiff volunteered for an assignment with the Army Air Force as a civilian operations analyst. Plaintiff served in that capacity from January 15 through September 29,1945 ; during part of that period plaintiff was employed with the Eleventh Air Force in the Pacific Theater of War. As a civilian operations analyst plaintiff was accorded the “assimilated” rank of colonel and he wore a military uniform. The latter privileges were granted primarily to ensure that plaintiff, like others similarly situated, would be accorded proper prisoner-of-war status in the event of his capture by the Japanese. Following the termination of his assignment as civilian operations analyst, plaintiff returned to his civilian occupation.
On May 15, 1950, plaintiff applied for a direct appointment in the United States Air Force Reserve. Plaintiff was offered an appointment as colonel in the USAFR on October 12, 1950, which he accepted. His initial appointment was for a term of 5 years, but in 1952 he received an indefinite term appointment in the USAFR. Plaintiff served continuously in the USAFR from October 12,1950, through the date of his 60th birthday, October 30, 1968. During that period he served six 15-day tours of active duty for training, but he did not serve on active duty for any extended period.
At the time of his 60th birthday, plaintiff had served a total of more than 24 years 11 months of military service. That total includes credit for 2 years 9 months and 20 days of service in the enlisted Naval Reserve (between 1925 and 1928), and 5 years 1 month and 12 days of commissioned active service in the Navy (from 1932 to 1937). The remainder of the time reflects his service in the Air Force Reserve. The *109 total service listed does not include any part of plaintiff’s service as a wartime civilian operations analyst with the Army Air Force.
By a letter dated May 19,1967, after plaintiff had accrued more than 20 years of military service, the Air Beserve Personnel Center (ABPC), Department of the Air Force, advised plaintiff, and plaintiff learned for the first time, that he would not be eligible for retirement pay from the Air Force upon attaining age sixty, because his record did not indicate any period of active duty during World War I, World War II, or the Korean Conflict. By an earlier letter, dated May 16, 1967, the ABPC had informed plaintiff that under applicable regulations his service as an operations analyst in 1915 was considered civilian, not military service. Plaintiff requested that the Air Beserve Personnel Center reconsider its decision of May 19,1967, but the ABPC affirmed its prior decision on July 2, 1967. Subsequently, plaintiff applied to the Air Force Board for the Correction of Military Becords (AFBCMB) for a determination that upon attaining age sixty, plaintiff would be eligible for military retirement pay mider the provisions of 10 U.S.C. §§ 1331 and 1332. 'Specifically, plaintiff contended that his record should be corrected to show that his service as an operations analyst with the Eleventh Air Force from January 15, 1945 to September 29,1945, was active duty performed within the statutory limiting dates of World War II (September 1940 through January 1, 1947) as the term “active duty” is used in 10 U.S.C. § 1331(c). A hearing was held before the Correction Board, at which plaintiff appeared, represented by counsel. Thereafter, in a decision dated May 2, 1968, the Correction Board made the following determination:
* * * The Board having examined and considered the application with attachments, the Master Personnel Becords and other evidence finds that no error or injustice has been committed to justify correcting applicant’s military records allowing him to qualify for retired pay at age 60. The Board finds that the service he performed as an Operations’ Analyst is not and should not be considered as constructive military service * * * [T]he law was established to give veterans of WWI, WWII and Korean conflict, the added benefit of Beserve ■retirement pay at age 60, if otherwise qualified. Partici *110 pating in the Reserve program does not necessarily lead to eligibility for retirement benefits (pay). Statutory requirements must be met. The Board concludes that applicant has failed to demonstrate that an error or injustice exists in this case. * * *
The recommendation of the Correction Board that plaintiff’s application for correction of his records should be denied was approved by the Assistant Secretary of the Air Force on 'May 6, 1968, and plaintiff was formally notified of the adverse decision of the Board on May 7, 1968. Plaintiff’s petition was filed in this court on January 7, 1969.
The applicable statutes are Title III of the Act of June 29, 1948, 62 Sbat. 1087, as amended by the Act of August 10, 1956, 70A Sbat. 102 and by the Act of August 25, 1959, 78 Stat. 425, now codified' in the following pertinent provisions of 10 Ü.S.C. §§ 1831 and 1332:
§ 1331. Age cmd service reguirements
*****
(c) No person who, before August 16, 1945, was a Reserve of an armed force, or a member of the Army without component or other category covered by section 1332(a) (1) of this title except a regular component, is eligible for retired pay under this chapter, unless he performed 'active duty after April 5, 1917, and before November 12, 1918, or after September 8, 1940, and before January 1, 1947, or unless he performed active duty (other than for training) after June 26, 1950, and before July 28,1953.
§ 1332. Computation of years of service in determining entitlement to retired pay
(a) Except as provided in subsection (b), for the purpose of determining whether a person is entitled to retired pay under section 1331 of this title, his years of service are computed by adding—
*****
(b) The following service may not be counted under subsection (a):
# Hí # ❖ #
(7) Service in any status other than that as commissioned officer, warrant officer, nurse, flight officer, appointed aviation cadet, or enlisted member * * *.
*111 In addition, 10 U.S.C. § 101 provides as follows, in relevant part:
§ 101. Defmitions
In addition to the definitions in sections 1-5 of title 1, the following definitions apply in this title:
ij: ^ íJ: :fe
(22) “Active duty” means full-time duty in the active military service of the United States. It includes duty on the active list, full-time training duty, annual training duty, and attendance, while in the active military service, at a school designated as a service school by law or lay the Secretary of the military department concerned.
Plaintiff does not contend that his service during 1945 as an operations analyst with the Army Air Force was military duty. The conclusion of the Correction Board and of the Air Eeserve Personnel Center that operations analysts such as plaintiff were civilians and not military personnel is clearly correct, as indicated by the documentation in the record before the Board and submitted with the present cross motions for summary judgment. In any case, plaintiff effectively conceded that his service as an operations analyst was civilian service in his testimony before the Correction Board and in his briefs before the court. Plaintiff does argue, however, that such civilian service with the Army Air Force during World War II satisfies the “active duty” requirement of subsection 1331 (c), liberally construed. Plaintiff shows that as an operations analyst he was directly subject to military orders; he was subjected to the same risks as military staff officers, and he wore a military uniform and assumed an assimilated rank of colonel. Plaintiff further notes that his overseas travel orders in 1945 stated that his service was directed toward “the accomplishment of an emergency war mission.” Plaintiff also points out that the original version of subsection 1331(c), as enacted in 1948, used the term “active Federal service” rather than the term “active duty.” Thus, plaintiff urges the court to hold that his wartime civilian service with the Army Air Force satisfies the intent of Congress in requiring “active duty” in time of war as a prerequisite to retired pay, in addition to the minimum age and length of service *112 requirements, for those who, like plaintiff, were members of the Reserves prior to August 16,1945.
However, we have concluded, albeit with some reluctance and a great deal of regret, that the pertinent statutory language expressly and unambiguously precludes plaintiff from entitlement to retired pay and thus from recovery in this action. As this court has stated on numerous occasions, retirement status for military personnel and the right to retirement pay are created and controlled by statute; and if there is no authorization in any statute for the retired pay claimed, the claimant is not entitled to such pay. Goodley v. United States, 194 Ct. Cl. 829, 834-5, 441 F. 2d 1175, 1178 (1971) ; Abbott v. United States, 152 Ct. Cl. 798, 804, 287 F. 2d 573, 576, cert. denied, 368 U.S. 915 (1961). Plaintiff’s entitlement, if any, to retired pay depends on his satisfying the requirements of 10 U.S.C. § 1331. Subsection 1331 (c) requires, in addition to the minimum age and length of service requirements of subsection 1331(a), active duty in either world war or the Korean ¡Conflict for those persons who were members of Reserve components prior to August 16, 1945. It is undisputed that plaintiff was an enlisted member of the Naval Reserve between 1925 and 1928. 10 U.S.C. § 101(22) defines “active duty” as full-time duty in the active military service. 10 U.S.C. § 1332, in effect, limits military status creditable for retirement purposes to status as a commissioned officer, warrant officer, or enlisted member. Plaintiff’s sole service during World War II was as a civilian, and such service clearly does not satisfy subsection 1331 (c) when read in the light of subsections 101(22) and 1332(b). While plaintiff was commissioned in the Air Force Reserve during the Korean Conflict, he was not then called to active duty. Since the right to retirement pay is, as previously stated, entirely dependent on statute, this court cannot disregard the express statutory language that bars recovery in this case. We recognize that our decision works a hardship where, as here, the claimant has contributed military service over a long period of time far in excess of the minimum length of service requirement. However, we believe that the only avenue of re *113 lief now available to plaintiff is the Congress, which created the statutory framework regarding- military retirement pay.
Plaintiff makes the alternative argument that even if his entitlement to retired pay is precluded by the terms of 10 U.S.C. § 1331(c), the Air Force should be estopped to deny his entitlement to such retired pay because of its conduct with respect to plaintiff at the túne the Air Force tendered a Reserve commission to him in 1950 and thereafter. Plaintiff alleges that the Air Force encouraged him to join and actively participate in the Reserve program in order to earn entitlement to retired pay at age sixty. The Air Force tendered to plaintiff, along with his commission, a copy of the Air Force Retirement Policy. Throughout the succeeding 18 years, plaintiff was encouraged to maintain a high level of participation in order to earn points creditable for retirement purposes and was regularly informed of the number of points he had accrued over the years. At no time, however, plaintiff states, did the Air Force ever advise him that he would never become eligible for retired pay because of the combined circumstance of his pre-1945 Reserve service and the terms of subsection 1331(c). These contentions are untenable. Even if we accept all of plaintiff’s assertions as statements of fact the most that the Air Force can fairly be said to have represented to plaintiff is that if at age sixty he had service totaling 20 years, he would be eligible for retired pay if otherwise qualified. The Air Force could not and did not guarantee that plaintiff would receive retired pay regardless of the applicable statutory provisions. Thus, there was no misrepresentation of fact or law by the Air Force, and this is not a case in which the military authorities concealed a defect in plaintiff’s record. The provisions of the United States Code and subsection 1331(c) thereof were as readily accessible to plaintiff as to defendant and the terms of the retirement statutes were clearly reiterated in the Air Force retirement regulations. Plaintiff could have and should have familiarized himself with the statutory and regulatory retirement provisions. In any case, plaintiff cannot rely on the generalized statements of Air Force officials and the retirement brochure as to the prerequisites to retirement pay and thus estop the Government from denying such pay if *114 the statute so requires. See Montilla v. United Stales, 198 Ct. Cl. 48, 457 F. 2d 978 (1972).
Finally, it has been suggested that tbe action of tbe Air Force Board for tbe Correction of Military Keeords was arbitrary and contrary to law in failing to correct plaintiff’s record to sbow entitlement to retired pay at age sixty, because tbe statutory authority for military correction boards (10 U.S.C. .§ 1552) empowers tbe boards not only to correct error, but also to remove injustices. See Skaradowski v. United States, 200 Ct. Cl. 488, 471 F. 2d 627 (1973). The Correction Boards undoubtedly do have equitable powers to be exercised in appropriate cases. However, in this case tbe Board, as clearly shown by tbe record of its proceedings, gave a full and fair consideration to plaintiff’s claim. The decision of a military correction board will not be disturbed unless it is arbitrary, capricious, or contrary to law. Muldonian v. United States, 193 Ct. Cl. 99, 432 F. 2d 443 (1970). We find no 'basis in this case for overturning or setting aside tbe decision of the Correction Board.
For tbe foregoing reasons, plaintiff’s motion for summary judgment is denied, defendant’s cross motion for summary judgment is granted, and plaintiff’s petition is dismissed.