**Mary L. KESLER, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 752–86 C.**

United States Claims Court.

Jan. 29, 1992.

## OPINION

HORN, Judge.

Plaintiff, the widow of a retired Air Force serviceman, seeks reinstatement of benefits under the Armed Forces Survivor Benefit Plan, 10 U.S.C. §§ 1447–1455 (1982). Plaintiff's Armed Forces Survivor Benefit Plan annuity payments were terminated in accordance with 10 U.S.C. § 1450 because plaintiff had received a Dependency Indemnity Compensation entitlement from the Veterans Administration which exceeded the amount of her Survivor Benefit Plan annuity. Plaintiff alleges that she lost her Survivor Benefit Plan annuity because an Air Force noncommissioned officer failed to advise her properly concerning her entitlements.

The parties filed cross-motions for summary judgment pursuant to Rule 56 of the Rules of the United States Claims Court. Plaintiff asserts estoppel and mistake against the defendant to void plaintiff's election of Dependency Indemnity Compensation, which resulted in the termination of plaintiff's Survivor Benefit Plan annuity. Defendant asserts that the plaintiff is only entitled to benefits under the terms and conditions set forth in the applicable statutes, and that no statutory provision exists which would entitle plaintiff to reinstatement of Survivor Benefit Plan annuities

under the circumstances presented in this case.

Based on a review of the papers and arguments presented, the court finds that benefits under the Survivor Benefit Plan have a statutory, not a contractual basis, and that plaintiff's reliance on contract and equitable theories of recovery is misplaced. Under the governing law, plaintiff is not entitled to reinstatement of benefits. Therefore, plaintiff's Motion for Summary Judgment is DENIED and the defendant's Cross–Motion for Summary Judgment is GRANTED. Furthermore, defendant's voluntary Motion to Dismiss its Counterclaim is also GRANTED.

## BACKGROUND

Plaintiff's husband, Master Sergeant Richard J. Kesler, retired from the Air Force on May 1, 1970. On September 21, 1972, Congress established the Survivor Benefit Plan, an annuity program for the surviving dependents of retired service members. Armed Forces–Survivor Benefit Plan, Pub.L. No. 92–425, 86 Stat. 706 (1972); *see also* S.Rep. No. 1089, 92d Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.Code Cong. & Admin.News 3288. Service members, like Master Sergeant Kesler, who had retired prior to the date of enactment, were provided with an opportunity to participate in the plan if they made an election to participate within one year of the date of enactment. *Id.* On August 30, 1973, Master Sergeant Kesler elected to participate in the Survivor Benefit Plan and appropriate deductions were subsequently made from his retirement payments.

Master Sergeant Kesler died of lung cancer on April 27, 1978, while being treated at a Veteran's Administration hospital. At that time, the plaintiff, Mrs. Kesler, became eligible to receive Dependency Indemnity Compensation benefits from the Veterans Administration, upon a showing that her husband's death was either, "service-connected," 38 U.S.C. § 410(a) (1982), or should be treated in the same manner as if it were service connected. 38 U.S.C. § 351 (1988).[1] Mrs. Kesler also became eligible to receive Survivor Benefit Plan benefits from the Air Force to the extent that her monthly Survivor Benefit Plan annuity exceeded any monthly Dependency Indemnity Compensation benefits to which she was entitled. *See* 10 U.S.C. § 1450(a) and (c).

The parties agree that Sergeant William P. Lynch, a noncommissioned officer assigned to the Casualty Affairs Office at the Los Angeles Air Force Station, visited Mrs. Kesler on May 8, 1978 to assist her in applying for benefits. During this meeting, Sergeant Lynch advised Mrs. Kesler of her eligibility for benefits under both the Survivor Benefit Plan and the Dependency Indemnity Compensation program and assisted her in completing the necessary application forms for these programs. Thus, on May 8, 1978, Mrs. Kesler applied to the Air Force for Survivor Benefit Plan benefits and, also, applied to the Veterans Administration for Dependency Indemnity Compensation, claiming that her husband's death was "service-connected" within the meaning of 38 U.S.C. § 410(a). In accordance with Sergeant Lynch's advice, on May 8, 1978, Mrs. Kesler also signed an authorization form allowing the Veterans Administration to reduce her Dependency Indemnity Compensation payments by the amount of any Survivor Benefit Plan overpayments that she might receive. This allowed plaintiff to begin receiving Survivor Benefit Plan payments, even though her eligibility

---

1. Title 38, section 351, of the United States Code provides in pertinent part:

Where any veteran shall have suffered an injury, or an aggravation of an injury, as the result of hospitalization, medical or surgical treatment, or the pursuit of a course of vocational rehabilitation under chapter 31 of this title, awarded under any of the laws administered by the Veterans' Administration, or as a result of having submitted to an examination under any such law, and not the result of such veteran's own willful misconduct, any such injury or aggravation results in additional disability to or the death of such veteran, disability or death compensation under this chapter and dependency and indemnity compensation under chapter 13 of this title shall be awarded in the same manner as if such disability, aggravation, or death were service-connected. * * *

38 U.S.C. § 351 (1988).

for Dependency Indemnity Compensation had not yet been determined.

Mrs. Kesler's application for Dependency Indemnity Compensation benefits under 38 U.S.C. § 410(a) was denied by the Veterans Administration on June 14, 1978, based on a finding that her husband's death was not "service-connected," as required by statute. That same month, the Air Force established a Survivor Benefit Plan annuity for Mrs. Kesler, effective April 28, 1978, the day after her husband's death. The Air Force requested information from the Veterans Administration regarding Mrs. Kesler's eligibility for Dependency Indemnity Compensation benefits on June 14, 1978, because her Survivor Benefit Plan annuity would have to be reduced by the amount of any Dependency Indemnity Compensation she was receiving. On August 4, 1978, the Veterans Administration responded that Mrs. Kesler was ineligible for Dependency Indemnity Compensation benefits. Based on this information, the Air Force began sending Mrs. Kesler monthly annuity payments, retroactive to April 28, 1978, in the amount of $246.19.

On July 14, 1978, Mrs. Kesler filed a $500,000.00 claim under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), 2671–80 (1976), for alleged negligence by the Veterans Administration in failing to detect her husband's lung cancer when he visited a Veterans Administration hospital approximately one year before he died. Mrs. Kesler settled her FTCA claim against the Veterans Administration, on April 24, 1980, for $155,000.00. In accepting this settlement, Mrs. Kesler forfeited her right to any further Dependency Indemnity Compensation benefits until the aggregate amount of the Dependency Indemnity Compensation benefits that she would have received, but for the FTCA settlement, equalled the amount of the settlement. 38 U.S.C. § 410(b)(2).

Mrs. Kesler's attorney in her FTCA action also presented a claim, on July 24, 1979, to the Veterans Administration for Dependency Indemnity Compensation benefits under 38 U.S.C. § 351, alleging that her husband's death should be treated in the same manner as if it were service connected. As a result of this request, the Veterans Administration reopened Mrs. Kesler's May 8, 1978 application for Dependency Indemnity Compensation benefits.

A Veterans Administration Adjudication Rating Board determined, on January 21, 1980, that the circumstances of Master Sergeant Kesler's death entitled plaintiff to Dependency Indemnity Compensation benefits under 38 U.S.C. § 351. The Veterans Administration, therefore, awarded Mrs. Kesler Dependency Indemnity Compensation benefits retroactive to April 1, 1978, the first day of the month in which her husband died.

On December 11, 1980, the Veterans Administration discovered that it had been improperly making Dependency Indemnity Compensation payments to Mrs. Kesler after she had received her FTCA settlement. The Veterans Administration informed Mrs. Kesler that, because she had received a tort settlement, she would not receive any further Dependency Indemnity Compensation payments until the full amount of the settlement had been offset.

Moreover, Mrs. Kesler's Dependency Indemnity Compensation payments exceeded the amount of her Survivor Benefit Plan annuity. Thus, in accordance with 10 U.S.C. § 1450(c), Mrs. Kesler became ineligible for any Survivor Benefit Plan benefits. However, Mrs. Kesler did not notify the Air Force of her application for, or her receipt of, Dependency Indemnity Compensation benefits under 38 U.S.C. § 351. As a result, Mrs. Kesler continued to receive both Dependency Indemnity Compensation benefits and Survivor Benefit Plan benefits, until the error was discovered in 1981.

In December 1981, a computer reconciliation of the accounts of the Veterans Administration and the Air Force uncovered Mrs. Kesler's duplicate Survivor Benefit Plan and Dependency Indemnity Compensation payments. Upon further investigation, the Air Force discovered that Mrs. Kesler had received Dependency Indemnity Compensation and Survivor Benefit Plan benefits for the same period and that, con-

trary to 10 U.S.C. § 1450(c), the amount of her Dependency Indemnity Compensation benefits had at all times exceeded the amount of her Survivor Benefit Plan annuity. Thus, the entire amount of Survivor Benefit Plan benefits received by Mrs. Kesler constituted an overpayment. Therefore, effective June 30, 1982, the Air Force discontinued Mrs. Kesler's Survivor Benefit Plan benefits.

Mrs. Kesler was notified by the Air Force of the Survivor Benefit Plan overpayment, totalling $14,423.79, on March 30, 1983. The Air Force requested repayment of that amount and advised Mrs. Kesler that some debts may be eligible for waiver and, that, if she wished to be considered for a waiver, she must submit a request explaining the circumstances of the debt. On April 25, 1983, plaintiff's counsel sent a letter to the Air Force advising the Air Force that Mrs. Kesler requested such a waiver.

On March 7, 1985, the Veterans Administration informed Mrs. Kesler that she had been overpaid $3,060.00 as a result of her receipt of both the FTCA settlement and Dependency Indemnity Compensation payments. The Veterans Administration, thereafter, established an account to offset Mrs. Kesler's tort settlement from her Dependency Indemnity Compensation benefits and estimated that it would take fifteen-to-twenty years to offset the tort settlement. Mrs. Kesler also requested a waiver of the Dependency Indemnity Compensation overpayment from the Veterans Administration.

On July 18, 1986, Mrs. Kesler and her attorney appeared personally before a Veterans Administration board authorized to consider her waiver request. The Board denied Mrs. Kesler's request for a waiver on October 7, 1986, because it determined that Mrs. Kesler knew or should have known that she was not entitled to Dependency Indemnity Compensation payments after receiving the tort settlement.

On November 28, 1984, Mrs. Kesler's attorney asked the Air Force to void her election of Dependency Indemnity Compensation benefits and to reinstate her Survivor Benefit Plan annuity. In response to an inquiry from Col. Phillip C. Sessions of the Air Force Judge Advocate General Corps, in a letter dated April 4, 1985, General Counsel Donald L. Ivers of the Veterans Administration stated:

Your [Col. Session's] letter of February 20, pertaining to Mrs. Mary Kesler's entitlement to dependency and indemnity compensation (DIC), has been referred to this office for reply because of the legal issues raised therein.

You have pointed out that under 38 U.S.C. § 351 her monthly entitlement to DIC is being offset against the amount of the settlement she received under the Federal Tort Claims Act; also, that her entitlement to an annuity under the Survivor Benefit Plan was terminated because of her entitlement to DIC. In essence, you have asked what the legal effect is, on her DIC entitlement, of the current setoff and of a possible renouncement of that benefit.

During the period of the set off Mrs. Kesler is still considered by the VA to be entitled to DIC. Although payments have been discontinued, her entitlement has not ceased. If, however, she were to exercise her right to renounce the DIC, her entitlement would terminate. Under 38 U.S.C. § 3106, 'any and all rights' to that benefit would be extinguished.

In our view, Mrs. Kesler could not legally renounce the DIC retroactive to the date of her initial entitlement (i.e., April 1, 1978). Under VA regulations, in particular 38 C.F.R. § 3.500(q), the discontinuance of a benefit pursuant to a renouncement is effective the date of the last payment. As we understand it, Mrs. Kesler last received a payment of DIC on March 1, 1981. Hence, that would be the earliest effective date of a renouncement.

Based on this Veterans Administration letter, Col. James Z. Howey of the Air Force Judge Advocate General Corps informed Mrs. Kesler, through a letter to her attorney dated October 2, 1985, that:

\*      \*      \*      \*      \*      \*

The VA General Counsel has informed us that if Mrs. Kesler were to renounce DIC, her entitlement to DIC would terminate. That office has also informed us that under VA regulations, in particular 38 C.F.R. § 3.500(q), the renouncement would be effective as of the date of the last DIC payment, which in Mrs. Kesler's case would be 1 Mar 1981.

Based on the foregoing VA opinion, if Mrs. Kesler were to renounce her right to DIC, she could again become entitled to receive an SBP annuity. * * *

Mrs. Kesler renounced her Dependency Indemnity Compensation benefits and requested restoration of her entitlements to the Survivor Benefit Plan by letters to the Veterans Administration and the Air Force on November 25, 1985.

In the defendant's Proposed Findings of Uncontroverted Fact, the defendant states that in the time between General Counsel Ivers' letter of April 4, 1985 and Mrs. Kesler's subsequent renouncement of her Dependency Indemnity Compensation on November 25, 1985, the Air Force "discovered" Comptroller General decisions, which held that a loss of Survivor Benefit Plan benefits is permanent and that such benefits may not be reinstated, absent specific legislative authority.[2] The defendant cites to two Comptroller General opinions: *In Re Speed,* 58 Comp.Gen. 626 (1979), and *In Re Survivor Benefit Plan,* 54 Comp.Gen. 838 (1975). Based on these decisions, Capt. Swift of the Air Force informed Mrs. Kesler, through a telephone conversation with her attorney on January 8, 1985, that her Survivor Benefit Plan benefits could not be reinstated.

Plaintiff then filed suit in the United States District Court for the Central District of California on January 27, 1986. In the district court action, plaintiff moved for summary judgment, and defendant cross-moved to dismiss the action or to transfer it to the United States Claims Court. The district court denied plaintiff's motion for summary judgment, dismissed the case and ordered it transferred to this court.

Pursuant to the order of the district court, the plaintiff filed an action in this court seeking reinstatement of benefits under the Survivor Benefit Plan. The complaint filed in this court is identical to the one that was filed in the district court. In its answer in the Claims Court, filed on February 24, 1987, the defendant denies any liability to plaintiff and counterclaims for the amount allegedly owed by the plaintiff to the Air Force for the overpayment of Survivor Benefit Plan benefits. On June 11, 1987, by leave of the court, defendant amended its counterclaim to include an additional debt allegedly owed by plaintiff to the Veterans Administration for the overpayment of Dependency Indemnity Compensation.

At a status conference on September 18, 1987, the court suspended proceedings on the defendant's counterclaim pending final administrative action and the United States Supreme Court's decision in *Traynor v. Turnage,* 485 U.S. 535, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988), which the parties and the court agreed could resolve a split between the federal circuit courts on the reviewability of Veterans Administration benefits decisions.

The defendant's amended counterclaim was voluntarily withdrawn on July 19, 1988, after the Veterans Administration discovered an administrative error and excused Dependency Indemnity Compensation repayment. The defendant also moved to dismiss the original counterclaim on October 13, 1988, pursuant to Rule 41(a)(2) of the Rules of the United States Claims Court, after the Comptroller General granted plaintiff's request for a waiver of repayment of Survivor Benefit Plan overpayments.

---

**2.** Curiously, in Plaintiff's Statement of Genuine Issues responding to the defendant's factual assertion that these two decisions were "discovered" midway in the proceedings, plaintiff makes an unusual statement, perhaps admission, as follows: "Plaintiff's version of the events, in accordance with Rule 56(d)(2) of the Rules of this Court, are that had the undersigned attorney prior to filing the litigation in this cause, been advised of firm legal and/or regulatory authority defeating Mrs. Kesler's cause, the litigation never would have been filed."

Plaintiff filed the present Motion for Summary Judgment, asserting that there are no triable issues of fact and that plaintiff is entitled to judgment as a matter of law. Plaintiff contends that her application for and subsequent acceptance of Dependency Indemnity Compensation was not a knowing, intelligent or informed act and should, therefore, be declared void so that her Survivor Benefit Plan annuity can be reinstated. In its Cross–Motion for Summary Judgment, the defendant contends that summary disposition of this action in its favor is appropriate because no statutory provision authorizes reinstatement of Survivor Benefit Plan benefits in Mrs. Kesler's case.

## DISCUSSION

According to Rule 56 of the Rules of the United States Claims Court, RUSCC 56, summary judgment in this court is properly granted when no genuine issue as to any material fact exists in the case and the moving party is entitled to a judgment as a matter of law. *See also* Fed.R.Civ.P. 56. Materiality is defined with reference to the governing substantive law. Only genuine disputes over material facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material fact exists, sufficient evidence must be shown supporting the claimed, factual dispute to require a jury or judge to resolve the parties differing versions of the truth at trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)).

The fact that both parties have moved for summary judgment, each asserting the alleged absence of genuine issues of material fact, does not relieve the court of its responsibility to determine the appropriateness of summary judgment. *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc., v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987)). The court must evaluate each party's motion on its own merits, taking care to draw all reasonable inferences against the party whose motion is under consideration. *See Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987).

The movant in a summary judgment proceeding bears the initial burden of showing the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 256, 106 S.Ct. at 2514; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Moreover, since the evidence must be viewed "through the prism of the substantive evidentiary burden," the nonmovant's burden will be the same as its burden under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 254–55, 106 S.Ct. at 2513. Thus, the party bearing the burden of proof at trial must produce the evidence from which a finder of fact could reasonably find in its favor on the merits of the case. *Id.* All significant doubt over factual issues, however, must still be resolved in favor of the party opposing the motion for summary judgment. *Mingus Constructors, Inc. v. United States*, 812 F.2d at 1390. Therefore, in the case at bar, to determine the materiality of the facts in the instant case, the court must look to the applicable substantive law regarding entitlement to the Survivor Benefit Plan benefits and Dependency Indemnity Compensation.

In 1972, Congress established the Survivor Benefit Plan, codified at 10 U.S.C. §§ 1447–1455 (1982), as an income maintenance program for the survivors of military retirees. *Passaro v. United States*, 774 F.2d 456, 457 (Fed.Cir.1985), *cert. denied*, 476 U.S. 1114, 106 S.Ct. 1969, 90 L.Ed.2d 653 (1986); *Department of Defense Military Pay & Allowance Comm. Action No. 561*, 65 Comp.Gen. 767, 768 (1986); *see also* Armed Forces–Survivor Benefit Plan, Pub.L. No. 92–425, 86 Stat. 706 (1972). Pursuant to the provisions of the Survivor Benefit Plan, the retired pay of a participating service member in the

Survivor Benefit Plan is reduced by an amount determined prior to retirement and this sum is used to fund an annuity to be paid to the member's survivors upon the service member's death. Participation in the Survivor Benefit Plan is automatic for service members who are married or have dependent children at the time they become eligible for retired pay, unless the service member affirmatively chooses not to participate before the first day upon which the member is eligible for retirement pay. 10 U.S.C. § 1448(a); *see also Barber v. United States*, 230 Ct.Cl. 287, 288–89, 676 F.2d 651, 652–53 (1982). The Survivor Benefit Plan also allows service members who were entitled to retired pay prior to the date of enactment of the statute, September 21, 1972, one year from that date to elect to participate in the Plan. Armed Forces–Survivor Benefit Plan, Pub.L. No. 92–425, 86 Stat. 706 (1972).

■ In order to determine the meaning of a statutory provision, the court's first inquiry must be directed to the language of the statute. *Texas State Comm'n for Blind v. United States*, 796 F.2d 400, 406 (Fed.Cir.1986) (quoting *Consumer Products Safety Comm'n v. Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2055, 64 L.Ed.2d 766 (1980)), *cert. denied*, 479 U.S. 1030, 107 S.Ct. 874, 93 L.Ed.2d 828 (1987); *Candelaria v. United States*, 5 Cl.Ct. 266, 272 (1984). If the language is plain, the court's function is to apply the statute according to its stated terms. *Texas State Comm'n for Blind v. United States*, 796 F.2d at 406.

Title 10, section 1450, of the United States Code provides, in pertinent part, as follows:

(a) Effective as of the first day after the death of a person to whom section 1448 of this title applies ... a monthly annuity under section 1451 of this title shall be paid to—

(1) the eligible widow or widower;

\*    \*    \*    \*    \*    \*

(c) If, upon the death of a person to whom section 1448 of this title applies, the widow or widower of that person is also entitled to compensation under sec-

tion 411(a) of title 38 [Dependency Indemnity Compensation], the widow or widower may be paid an annuity under this section, but only in the amount that the annuity otherwise payable under this section would exceed that compensation.

10 U.S.C. § 1450(a)(1) and (c). The parties do not contest the plain meaning of these statutory provisions, nor their effect. The record is clear that Master Sergeant Kesler elected to participate in the Survivor Benefit Plan and that following his death, on April 27, 1978, Mrs. Kesler became eligible to receive Survivor Benefit Plan benefits from the Air Force, but only to the extent that the amount of her monthly Survivor Benefit Plan annuity exceeded any monthly Dependency Indemnity Compensation benefits she might receive. *Id.; see also Master Sergeant William B. Framer, USAF*, 63 Comp.Gen. 536, 537 (1984); *Mary J. Hogsed*, 61 Comp.Gen. 287, 288 (1982). Moreover, it is uncontested that a claim for Dependency Indemnity Compensation benefits, pursuant to 38 U.S.C. § 351, was presented on Mrs. Kesler's behalf to the Veterans Administration and that plaintiff was awarded benefits, which exceeded the amount of her Survivor Benefit Plan annuity.

Plaintiff asserts that she is entitled to summary judgment on two grounds. First, plaintiff would have this court find that if a beneficiary renounces his/her entitlement to Dependency Indemnity Compensation, the benefits of which at all times exceeded the amount of his/her Survivor Benefit Plan annuity, the beneficiary can then have his/her Survivor Benefit Plan annuity restored. In the alternative, plaintiff asserts that her election to apply for Dependency Indemnity Compensation should be considered void since an agent of the defendant failed to fully inform her that receipt of Dependency Indemnity Compensation concurrently with Survivor Benefit Plan annuities could result in the termination of her Survivor Benefit Plan entitlement. Plaintiff asserts that reliance upon the Air Force agent's advice, specifically, Sergeant Lynch's advice offered at the May 8, 1978 meeting with plaintiff, resulted in the ter-

mination of Survivor Benefit Plan benefits, and that application of the theories of mutual mistake, unilateral mistake and equitable estoppel should result in judgment for the plaintiff in this case.

The defendant in its Cross–Motion for Summary Judgment asserts that plaintiff has failed to state a claim upon which relief can be granted and, therefore, that summary disposition of this case is justified. First, the defendant contends the plaintiff is not entitled to the reinstatement of Survivor Benefit Plan benefits because no statutory provision authorizes reinstatement in these circumstances. Second, the defendant asserts that the plaintiff's reliance on contractual or equitable theories is misplaced, since the Survivor Benefit Plan and the Dependency Indemnity Compensation program are statutorily created entitlements and not contractual rights.

A review of the relevant, statutory framework and legislative history demonstrates that the Survivor Benefit Plan was not intended to provide additional income to those entitled to receive benefits under some other provision of the law. Armed Forces–Survivor Benefit Plan Pub.L. No. 92–425, 86 Stat. 706 (1972); *see also*, S.Rep. No. 1089, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Admin.News 3288 at 3292–96. As a result, the statutory scheme limits the receipt of Survivor Benefit Plan annuities concurrently with other similarly designed benefits, such as Dependency Indemnity Compensation. For instance, 10 U.S.C. § 1450(c) provides that:

> If, upon the death of a person to whom section 1448 of this title applies, the widow or widower of that person is also entitled to compensation under section 411(a) of title 38 [Dependency Indemnity Compensation], the widow or widower may be paid an annuity under this section, but only in the amount that the annuity otherwise payable under this section would exceed that compensation.

As demonstrated by subsection 1450(c), the statutory schemes for Dependency Indemnity Compensation and the Survivor Benefit Plan acknowledge the existence of each other and, because of their duplication of purpose, limit the amount that a particular individual may receive from both. Congress expressly provided Survivor Benefit Plan benefits only to the extent that entitlement to such benefits exceeds the amount of any benefits received under the Dependency Indemnity Compensation program. 10 U.S.C. § 1450(c).

Also before the court is whether plaintiff may renew her eligibility for Survivor Benefit Plan annuities after waiving her statutory entitlement to Dependency Indemnity Compensation benefits, while also continuing to receive the benefits of a Federal Tort Claims Act settlement. Congress specifically provided for an offset of Dependency Indemnity Compensation benefits equal to the amount of any judicial award or settlement received in connection with the death of a veteran. Title 38 of the United States Code, subsection 410(b)(2), provides:

> If a surviving spouse or child receives any money or property of value pursuant to an award in a judicial proceeding based upon, or a settlement or compromise of, any cause of action for damages for the death of a veteran described in paragraph (1) of this subsection, benefits under this chapter payable to such surviving spouse or child by virtue of this subsection shall not be paid for any month following a month in which any such money or property is received until such time as the total amount of such benefits that would otherwise have been payable equals the total of the amount of the money received and the fair market value of the property received.

38 U.S.C. § 410(b)(2).

Congress has expressly authorized reinstatement of Survivor Benefit Plan benefits in one limited circumstance. Title 10, subsection 1450(k), provides for reinstatement when Dependency Indemnity Compensation is lost because of remarriage by a widow or widower over sixty years of age.[3] There is no comparable statutory

---

**3.** 10 U.S.C. § 1450(k) provides the following:

If a widow or widower whose annuity has

provision entitling an individual, such as Mrs. Kesler, who voluntarily, albeit perhaps as claimed, mistakenly, renounces her entitlement to Dependency Indemnity Compensation benefits following the receipt of a Federal Tort Claims Act settlement, to have a Survivor Benefit Plan annuity restored. Pub.L. No. 92–425, 86 Stat. 706 (1972).

Therefore, while Congress acknowledged in subsection 1450(e) that Survivor Benefit Plan annuities could be terminated by operation of subsection 1450(c), the termination would appear to be permanent and no conditions for reinstatement are articulated in the statute. *See, In re Survivor Benefit Plan*, 54 Comp.Gen. 838, 839–40 (1975) (entitlement under the Survivor Benefit Plan terminates permanently when Dependency Indemnity Compensation exceeds the amount that would have been paid as an annuity under the Survivor Benefit Plan); *In re Speed*, 58 Comp.Gen. 626, 627–28 (1979); *see also, Department of Defense Military Pay & Allowance Comm. Action Number 561*, 65 Comp.Gen. at 768 (a valid marriage entered into by a dependent of a veteran "terminates the child's annuity eligibility for all time." Even if the child divorces before he/she reaches the age of majority, no renewed dependency can be created).

■ Congress explicitly provided in subsection 1450(e) for the refund of any amounts deducted from the service member's pay for participation in the Survivor Benefit Plan when, as in Mrs. Kesler's case, Dependency Indemnity Compensation exceeds the amount to which plaintiff is entitled under the Survivor Benefit Plan. Congress did not provide, as plaintiff would have this court find, that if the beneficiary voluntarily elects to renounce his/her entitlement to Dependency Indemnity Compensation, then entitlement to Survivor Benefit Plan annuities can be restored.

Consequently, plaintiff should not be allowed to resume Survivor Benefit Plan entitlement based upon renunciation of Dependency Indemnity Compensation. Moreover, plaintiff's renunciation of Dependency Indemnity Compensation, which was awarded pursuant to 38 U.S.C. § 351, will not negate plaintiffs' receipt of her Federal Tort Claims Act settlement, which, because of the offset required by 38 U.S.C. § 410(b)(2), amounts to a substitute payment for her actual Dependency Indemnity Compensation benefits. Thus, restoration of plaintiff's Survivor Benefit Plan annuities, for a plaintiff who receives a Federal Tort Claims Act award, would conflict with the clear congressional mandate that a survivor is not entitled to double benefits.

■ The court concludes that plaintiff has failed to demonstrate that she is entitled to summary disposition in her favor regarding her claim to reinstatement of Survivor Benefit Plan annuities. The loss of Survivor Benefit Plan annuities is generally permanent, and reinstatement of Survivor Benefit Plan entitlement is possible only if authorized by statute.

While plaintiff has failed to meet her burden, the court finds that defendant has demonstrated in its Cross–Motion for Summary Judgment that there is no genuine issue of material fact present in this case. As discussed above, a review of the statutory framework and legislative history demonstrates that Congress never intended or contemplated that entitlement to the Survivor Benefit Plan could be reinstated under the circumstances presented in this case. As a matter of law, plaintiff is not entitled to reinstatement of Survivor Benefit Plan benefits where restoration of plaintiff's Survivor Benefit Plan annuity would

been adjusted under subsection (c) subsequently loses entitlement to compensation under section 411(a) of title 38 [Dependency Indemnity Compensation] because of the remarriage of such widow or widower, and if at the time of such remarriage such widow or widower is 60 years of age or more, the amount of the annuity of such widow or widower shall be readjusted, effective on the date of such loss of compensation, to the amount of the annuity which would be in effect with respect to such widow or widower if the readjustment under subsection (c) had never been made, but such readjustment may not be made until the widow or widower repays any amount refunded under subsection (e) by reason of the adjustment under subsection (c). 10 U.S.C. § 1450(k).

conflict with the congressional intent clearly stated in the applicable statute that a survivor is not entitled to both Survivor Benefit Plan and Dependency Indemnity Compensation benefits and where there is no provision under the applicable law for reinstatement of plaintiff's Survivor Benefit Plan benefits.

In the alternative, plaintiff advances additional arguments based upon contract law and equitable principles to support the entry of summary judgment in her favor. First, plaintiff asserts that the Air Force breached its duty to her because Sergeant Lynch did not advise her properly, during their May 8, 1978 meeting, of her rights and entitlements. Second, plaintiff argues that because she applied for Dependency Indemnity Compensation based on the alleged material misrepresentations made by Sergeant Lynch, the court should void her application for Dependency Indemnity Compensation.[4] Third, plaintiff asserts that the Air Force is contractually obligated to restore her Survivor Benefit Plan annuity because Col. James Z. Howey of the Air Force Judge Advocate General Corps mistakenly advised her, by letter dated October 2, 1985, that her Survivor Benefit Plan annuity could be restored if she renounced her entitlement to Dependency Indemnity Compensation.

In response to plaintiff's arguments, in its Cross–Motion for Summary Judgment, the defendant again asserts that plaintiff is entitled to a Survivor Benefit Plan annuity only under the terms and subject to the conditions provided by statute and that reliance on the other contract theories of recovery she has advanced are misplaced.

Plaintiff relies heavily on *Fairchild v. Lehman,* 814 F.2d 1555 (Fed.Cir.1987), for the proposition that a choice made in a military case which was not knowing and voluntary, should not be upheld by a court. In *Fairchild,* the court held that a statutory right to trial pursuant to the Uniform Code of Military Justice could not be validly waived if the accused is misinformed about the consequences of electing nonjudicial punishment instead of a court martial. *Fairchild,* 814 F.2d at 1559–60. The *Fairchild* case, however, has no bearing on the case at bar; rather, that case was based upon the due process guarantees of the Constitution in a military court-martial proceeding.

Plaintiff also relies on *Shelton v. Brunson,* 465 F.2d 144 (5th Cir.1972), and *Kostelac v. United States,* 247 F.2d 723 (9th Cir.1957), to support recision of her Dependency Indemnity Compensation application based on material misrepresentation by a government official. These cases, however, involved avoidance or recision of a reenlistment contract in *Shelton* and of a government contract to purchase garbage from an army base in *Kostelac,* and do not address a plaintiff's rights pursuant to a statutorily created benefit program.

The inappropriateness of reverting to contract law to define military pay rights was, in fact, noted by the United States Supreme Court, which stated that, "[p]reliminarily, it is to be observed that common-law rules governing private contracts have no place in the area of military pay. A soldier's entitlement to pay is dependent upon statutory right." *Bell v. United States,* 366 U.S. 393, 401, 81 S.Ct. 1230, 1235, 6 L.Ed.2d 365 (1961). Likewise, the United States Court of Appeals for the Federal Circuit has stated: "entitlement to retirement benefits must be determined by reference to the statute and the regulations governing these benefits, rather than to ordinary contract principles." *Zucker v. United States,* 758 F.2d 637, 640 (Fed.Cir.

---

**4.** The court notes that, according to the record, Mrs. Kesler initially applied for Dependency Indemnity Compensation by asserting that her husband's death was service connected within the meaning of 38 U.S.C. § 410(a). This application was made with Sergeant Lynch's assistance on May 8, 1978, however, the Veterans Administration denied the application on June 4, 1978. Mrs. Kesler's attorney in her Federal Tort Claims Act suit subsequently filed a second application for Dependency Indemnity Compensation with the Veterans Administration on July 24, 1979. In her second application, pursuant to 38 U.S.C. § 351, plaintiff asserted that her husband's death should be treated in the same manner as if it were service connected. The Veterans Administration awarded plaintiff Dependency Indemnity Compensation based on this second request under 38 U.S.C. § 351 on January 21, 1980.

1985) (citing *United States v. Larionoff,* 431 U.S. 864, 869, 97 S.Ct. 2150, 2154, 53 L.Ed.2d 48 (1977)), *cert. denied,* 474 U.S. 842, 106 S.Ct. 129, 88 L.Ed.2d 105 (1985).

Plaintiff's claim in the present case is not unlike the claim raised in *Mayer v. United States,* 201 Ct.Cl. 105 (1973). In *Mayer,* the plaintiff, an officer in the United States Air Force Reserve (USAFR), asserted that even if his entitlement to retired pay was precluded by the terms of the statute, 10 U.S.C. § 1331(c), the Air Force should be estopped from denying his entitlement to such retired pay because of material misrepresentations made to him. In *Mayer,* the plaintiff argued that Air Force officers encouraged him to join, and then to actively participate in the Reserve program in order to earn entitlement to retired pay at age sixty. The Court of Claims, in rejecting plaintiff's argument, stated that:

> The provisions of the United States Code and subsection 1331(c) thereof were as readily accessible to plaintiff as to defendant and the terms of the retirement statutes were clearly reiterated in the Air Force regulations. Plaintiff could have and should have familiarized himself with the statutory and regulatory retirement provisions. In any case, plaintiff cannot rely on the generalized statements of Air Force officials and the retirement brochure as to the prerequisites to retirement pay and thus estop the Government from denying such pay if the statute so requires.

*Mayer,* 201 Ct.Cl. at 113–14.

■■■ This court is persuaded that a similar analysis should control here. Like the plaintiff in *Mayer,* Mrs. Kesler proposes that this court should rewrite the legislation, rather than apply or interpret the clear provisions of the statute. Alternatively, plaintiff argues this court should ignore the statutory provisions because she claims she was misinformed about their contents. Plaintiff would have this court impose an additional notification requirement on the Air Force, beyond any included in the statute, so that notice must be given to a Survivor Benefit Plan beneficiary that concurrent acceptance of Dependency In-

demnity Compensation benefits (which are also offset by a Federal Tort Claims Act settlement), may result in permanent termination of Survivor Benefit Plan annuities.

The law is clear that, "absent mandatory instructions from Congress or the President, there is no legal requirement that the Government affirmatively inform an employee about his rights and eligibility under retirement laws." *Warren v. United States,* 4 Cl.Ct. 552, 558 (1984) (citing *Nordstrom v. United States,* 169 Ct.Cl. 632, 638, 342 F.2d 55, 59 (1965)). The language of the applicable statutes clearly provide that Survivor Benefit Plan annuities terminate when Dependency Indemnity Compensation payments exceed Survivor Benefit Plan benefits. 10 U.S.C. § 1448(c). Moreover, Dependency Indemnity Compensation payments are to be offset by the amount of any Federal Tort Claims Act settlement. 38 U.S.C. § 410(b)(2). There are no statutory provisions allowing for the reinstatement of Survivor Benefit Plan benefits, once voluntarily waived by the beneficiary.

In short, plaintiff is entitled to a Survivor Benefit Plan annuity only under the terms and subject to the conditions set forth in Title 10, Chapter 73, subchapter II, of the United States Code. " 'The status of retirement for military personnel and the right to and the amount of retired and retirement pay are created and controlled by statute. If there is no statutory authorization for payment then the claimant is not entitled to any payment as a matter of right.' " *See Goodley v. United States,* 194 Ct.Cl. 829, 835, 441 F.2d 1175, 1178–9 (1971) (quoting *Abbott v. United States,* 152 Ct.Cl. 798, 804, 287 F.2d 573, 576, *cert. denied,* 368 U.S. 915, 82 S.Ct. 192, 7 L.Ed.2d 130 (1961)).

## CONCLUSION

Therefore, this court concludes that benefits under the Armed Forces Survivor Benefit Plan are strictly statutory in nature. The plaintiff's reliance on contract or other theories of recovery is misplaced. Plaintiff has failed to state a claim upon which relief can be granted. Under the

applicable law, plaintiff is not entitled to reinstatement of benefits. For the reasons stated above, the plaintiff's Motion for Summary Judgment is, hereby, DENIED, and the defendant's Cross–Motion for Summary Judgment is, hereby, GRANTED. The defendant's voluntary Motion to Dismiss its Counterclaim is also, hereby, GRANTED. The Clerk of the court is ordered to enter judgment in accordance with this Opinion, to dismiss the plaintiff's complaint for failure to state a claim upon which relief can be granted and to dismiss the defendant's counterclaim.

IT IS SO ORDERED.