William O. SCHISM and Robert
Reinlie, Plaintiffs,

v.

UNITED STATES of America and
William Cohen as Secretary
of Defense, Defendants.

No. 3:96cv349/RV.

United States District Court,
N.D. Florida,
Pensacola Division.

June 10, 1997.

J.D. Roy Atchison, Northern Dist. of Florida, Pensacola, FL, Shirley Wang, U.S. Dept. of Justice, Washington, DC, for Defendant.

George Everette Day, Day and Meade, P.A., Fort Walton Beach, FL, for Plaintiffs.

## ORDER

VINSON, Chief Judge.

Pending is the motion to dismiss of the defendants. (doc. 11) A hearing on the motion was held on March 26, 1997.

### I. BACKGROUND

Plaintiffs William O. Schism and Robert L. Reinlie [1] are retired veterans over 65 years of age, each of whom has served his country for over twenty years in the armed forces. They retired in 1979 and 1968, respectively. Plaintiffs bring this suit alleging breach of contract, age discrimination, and violation of their Fifth Amendment right to due process. They also seek mandamus.

According to the plaintiffs, they joined and remained in the United States armed forces on the basis of promises by the armed forces that they would receive free lifetime medical care for themselves and their dependents. Plaintiffs allege that the medical treatment as promised was not subject to the restrictions of Medicare and Social Security. Plaintiffs conceded at oral argument that no statutes or regulations provide that they are entitled to these benefits indefinitely, but contend that such promises were part of recruiting manuals and other authoritative written representations. The plaintiffs have submitted general written materials provided by the military service branches which specify that military retirees are entitled to medical treatment and hospitalization as a part of their retirement benefits. Plaintiffs did not offer, or attempt to offer, any evidence or argument regarding representations or promises made specifically to them.

Plaintiffs contend that the United States has breached its contract to provide them with free medical care as part of their retirement compensation.[2] Plaintiffs allege that while the United States fulfilled its obli-

1. Although this case was originally styled as a class action (doc. 8), the plaintiffs' motion to withdraw the motion to certify class representation was granted on March 11, 1997. The original named plaintiff, George "Bud" Day, withdrew as plaintiff and is now serving as the current plaintiffs' counsel. (doc. 3)

2. To provide an improved and uniform program for members and certain former members of the armed services, Congress established the Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS"). CHAMPUS participants pay a portion of their medical bills and the government covers the rest.

In 1994, the Defense Department developed and implemented a health benefit option for beneficiaries eligible for health care known as "Tricare," which is modeled on health maintenance organization (HMO) plans. See 32 C.F.R. § 199.17; P.L. 103–160 Sec. 731, 107 Stat. 1696;

gations under the "contract" for many years by providing free health care, access to health care has recently been revoked or limited, and the plaintiffs have been forced to rely on Medicare, requiring payments by them and resulting in unanticipated out-of-pocket expenses. Plaintiffs also assert in their complaint that they have suffered damages because civilian health care is inferior to that provided by the military.

The plaintiffs further contend that the actions of the United States constitute age discrimination because the current military health care plan is age based, making it arbitrary and unreasonably discriminatory against aged veterans. Plaintiffs complain that the government's deduction of money from their social security payments to pay for the Medicare benefits constitutes a seizure of their property which violates their due process rights under the Fifth Amendment. They seek an order requiring the United States to cease deducting payments from their retired pay and to provide plaintiffs and their dependents the unlimited free medical care for which they allegedly contracted.

Defendants have moved to dismiss the plaintiffs' claims pursuant to Rules 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure, on the basis that this court does not have subject matter jurisdiction and that the allegations set forth by plaintiffs fail to state a claim.

## II. ANALYSIS

### A. Motion to Dismiss

When subject matter jurisdiction is attacked under Rule 12(b)(1), the plaintiff bears the initial burden of showing that jurisdiction is proper. In ruling on a Rule 12(b)(1) motion, the court may look to mate-

rials outside the pleadings. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). Indeed, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

A Rule 12(b)(6) motion to dismiss for failure to state a claim cannot be granted unless the complaint alleges no set of facts which, if proved, would entitle the plaintiff to relief. *See, e.g., Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90, 96 (1974); *Blackston v. State of Alabama*, 30 F.3d 117, 120 (11th Cir.1994). On a motion to dismiss, the court must accept all the alleged facts as true and find all inferences from those facts in the light most favorable to the plaintiff. *See, e.g., Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir.1994). However, regardless of the alleged facts, Rule 12(b)(6) does authorize a court to dismiss a complaint on a dispositive issue of law. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir.1993).

### B. Jurisdiction

▪▪▪ (1) **Sovereign Immunity.** The United States is a sovereign and is immune from suit unless it has expressly waived such immunity and consented to be sued. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 32, 112 S.Ct. 1011, 1014, 117 L.Ed.2d 181 (1992); *United States v. Shaw*, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940). Waiver of sovereign immunity is a prerequisite to subject matter jurisdiction in this court. *United States v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941).

In this case, plaintiffs assert claims under the Little Tucker Act [28 U.S.C. §§ 1346(a)(2), 1349, 1491],[3] the Federal Tort

---

P.L. 103–139 Sec. 8025, 107 Stat. 1443. Retirees who qualify for Medicare under the Social Security Act, 42 U.S.C. § 1395c *et seq.*, are not eligible for CHAMPUS or Tricare benefits. 10 U.S.C. § 1086(d). Medicare Part A provides basic protection against the costs of hospital care, related post hospital care, home health services and hospice care. 42 U.S.C. § 1395c. Medicare Part B provides certain physicians' services, home health service, laboratory services, and other services not covered under Part A. 42 U.S.C. § 1395k. Retirees are automatically entitled to protection under Part A, but must enroll

in Part B to receive those benefits. All Part B enrollees must pay a monthly premium via deduction from their social security benefits. 42 U.S.C. § 1395s.

3. Tucker Act claims for more than $10,000 may be brought only in the United States Claims Court. *United States v. Hohri*, 482 U.S. 64, 72, 107 S.Ct. 2246, 2251–52, 96 L.Ed.2d 51, 60 (1987) (citing 28 U.S.C. § 1491(a)(1)). Little Tucker Act claims for less than $10,000 may be brought either in a United States District Court or in the United States Claims Court. *Id.* (citing 1346(a)(2)). The plaintiffs' asserted claims, each

Claims Act [28 U.S.C. § 1346(b) ], the Fifth Amendment to the United States Constitution, and the Mandamus Act [28 U.S.C. § 1361]. The defendants contend that the plaintiffs have not shown a waiver of sovereign immunity except under the Little Tucker Act.[4]

It is obvious that the plaintiffs have not alleged any facts which support a claim under the Federal Tort Claims Act. Likewise, the United States has not waived its sovereign immunity from suit for money damages arising from constitutional violations, such as alleged violations of the Fifth Amendment. *Cato v. United States,* 70 F.3d 1103 (9th Cir.1995); *Kurinsky v. United States,* 33 F.3d 594, 600 (6th Cir.1994), *cert. denied,* 514 U.S. 1082, 115 S.Ct. 1793, 131 L.Ed.2d 721 (1995); *United States v. Timmons,* 672 F.2d 1373, 1380 (11th Cir.1982).[5] Nor is this alleged to be a *Bivens* action in any way. Finally, the present action does not meet the criteria for waiver of sovereign immunity under the Mandamus Act. *See Coggeshall Development Corp. v. Diamond,* 884 F.2d 1, 3–4 (1st Cir.1989); *McClain v. Panama Canal Comm'n,* 834 F.2d 452, 454 (5th Cir.1987); *Doe v. Civiletti,* 635 F.2d 88, 94 (2d Cir.1980).[6] Thus, for jurisdictional purposes, the only possible grounds for plaintiffs' claims are under the Little Tucker Act, the Fifth Amendment (for non-monetary relief), and the Age Discrimination Act. These are each discussed below.

**(2) Reviewability of Internal Military Decisions.** The defendants initially contend that it is generally improper for courts to review internal military decisions, such as the allocation of medical benefits. According to the defendants, the plaintiffs' Fifth Amendment claim is subject to the balancing test established by the former Fifth Circuit in *Mindes v. Seaman,* 453 F.2d 197 (5th Cir.1971).

The beginning point of this analysis is *Chappell v. Wallace,* 462 U.S. 296, 304, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983), where the Supreme Court of the United States held that enlisted military personnel are precluded from maintaining suits against superior officers to recover damages for injuries resulting from violations of constitutional rights in the course of military service. The former Fifth Circuit, in *Mindes v. Seaman,* employed a multi-factor test to determine whether a particular constitutional claim asserted by members of the armed forces against their superiors is barred from suit. The Eleventh Circuit has subsequently held that district courts are required to employ the *Mindes* test before considering the merits of constitutional challenges to military decisions. *Stinson v. Hornsby,* 821 F.2d 1537 (11th Cir.1987).

To obtain review of an internal military decision, a plaintiff must allege that the military has violated a statutory, regulatory, or constitutional provision, and must then demonstrate that he has exhausted his available intra-service remedies. *Stinson,* 821 F.2d at 1540. After a plaintiff meets this threshold, the district court must balance the affected interests to determine the propriety of review of the military's decision. The factors to be examined are:

(1) The nature and strength of the plaintiff's challenge to the military determination ... (2) The potential injury to the plaintiff if review is refused. (3) The type and degree of anticipated interference with the military function ... [and] (4) The

---

for less than $10,000, are within the scope of the Little Tucker Act.

**4.** Plaintiffs' attempt to offer additional support for their contention that sovereign immunity has been waived by relying on *United States v. Winstar,* —— U.S. ——, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996) is misplaced, as that case involved express written contracts, the existence of which was not disputed. In *Winstar,* the United States was found liable for breach of contract when the passage of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA) altered certain regulatory terms that had been contractually agreed upon by the parties.

**5.** Section 702 of the Administrative Procedure Act provides a waiver of sovereign immunity in certain actions against the United States seeking relief other than money damages. 5 U.S.C. § 702. *See A.E. Finley & Associates, Inc. v. United States,* 898 F.2d 1165 (6th Cir.1990).

**6.** The plaintiffs have not shown that they have a clear right to relief, or that the defendants have a clear duty to act, as is required for jurisdiction. *See Sheehan v. Army and Air Force Exchange Serv.,* 619 F.2d 1132, 1141 (5th Cir.1980).

extent to which exercise of military expertise or discretion is involved.

*Stinson,* 821 F.2d at 1540 (citation omitted).

The plaintiffs allege that the defendants violated their Fifth Amendment rights by depriving them of their property rights in free post-retirement medical care. I will assume for purposes of this motion that the plaintiffs have exhausted any available intraservice remedies.

The defendants contend that if the plaintiffs have met the threshold showings, application of the four factors of the *Mindes* test shows that the decisions of the military regarding provision of health care to retirees is not reviewable. The threshold question is whether the medical care decision is a "military decision" at all, and it arguably is not. Nevertheless, for purposes of this pending motion only, I will review the *Mindes* factors as they may be applicable.

The prudential considerations set forth in the factors of the *Mindes* test sufficiently favor the plaintiffs to allow an examination of their claim on the merits. First, the plaintiffs have a strong interest in challenging the change in their medical benefits, in light of their understanding of, and reliance upon, the alleged promises made to them at the time of their service commitment decisions. Second, the plaintiffs' potential injury if review is denied is not insignificant. As to the third factor, the defendants contend that granting the plaintiffs' request for unlimited health care could require the reallocation of current medical staff and space, and could affect the health and stability of the active duty armed forces. While the defendants argue that under the fourth factor, the military is in the best position to determine the health care needs of its active personnel, the plaintiffs respond that examining the running of a military medical program does not require special expertise. Drawing all inferences in favor of the plaintiffs, their claim is sufficient to warrant being addressed on the merits. Therefore, there is jurisdiction to do so.

### C. *The Little Tucker Act Claim for Breach of Contract*

■ The defendants contend that the plaintiffs' right to military benefits is governed by federal statute rather than contract law, and that a contract action is inappropriate. *See Lavin v. Marsh,* 644 F.2d 1378, 1383 (9th Cir.1981); *Goodley v. United States,* 194 Ct.Cl. 829, 441 F.2d 1175, 1178 (1971). The plaintiffs argue, however, that the government breached a valid implied-in-fact contract with the plaintiffs, and that their claims are actionable under the Little Tucker Act, which provides for a limited waiver of sovereign immunity.

The substance of the plaintiffs' claim under the Little Tucker Act is that an implied contract existed between the plaintiffs and the government that obligates the government to provide military retirees and their families with free medical care in military facilities for the retiree's lifetime. According to the plaintiffs, the alleged offer was part oral and part written, was accepted by the plaintiffs, and was performed by the United States for several generations—until the implementation of "Tricare."

■ The Little Tucker Act provides concurrent jurisdiction in the United States district courts and the Claims Court for claims against the United States founded "upon any express or implied contract with the United States" that do not exceed $10,000 in amount. 28 U.S.C. § 1346(a)(2). An implied-in-fact contract with the government requires mutuality of intent to contract, consideration, and an unambiguous offer and acceptance. *Alliance of Descendants of Texas Land Grants v. United States,* 37 F.3d 1478 (Fed.Cir.1994); *Helash v. Ballard,* 638 F.2d 74, 75 (9th Cir.1980). The plaintiff must also show that the officer whose conduct is relied upon had actual authority to bind the government in contract. *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1575 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985); *Mega Construction Co. v. United States,* 29 Fed.Cl. 396 (Fed.Cl.1993). Mutuality is inferred "from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Kollsman v. United States,* 25 Cl.Ct. 500, 514 (Cl.Ct.1992).

Here, the amended complaint alleges that the defendant repeatedly promised the plaintiffs, beginning in the 1940's, that if the

plaintiffs fulfilled the required term of service, the plaintiffs would continue to receive free medical care for themselves and their dependents after retirement. Among the materials submitted by the plaintiffs is a United States Navy recruiting manual from 1945 stating that "[r]etired officers are entitled to medical care and hospitalization by naval medical facilities." The United States Navy "BlueJackets' Manual" from 1944 states that upon retirement, Navy personnel are entitled to medical treatment and hospitalization.

The defendants contend that the plaintiffs' contract claim must fail because military benefits are noncontractual by nature, and are governed by statute. The applicable statute is Title 10, United States Code, Section 1074, which provides in relevant part that:

> A member or former member of a uniformed service who is entitled to retired or retainer pay, or equivalent pay may, upon request, be given medical and dental care in any facility of any uniformed service, subject to the availability of space and facilities and the capabilities of the medical and dental staff.

10 U.S.C. § 1074(b). The statute was enacted in 1956. Neither party has identified any statute or regulation pre-dating 1956 that addresses the medical benefits of military retirees.

For those retirees who began service after the enactment of the statute in 1956, the limitations imposed on benefits by the statute override any representations made by the government, since any promises in contradiction of the statute would be beyond the authority of government agents to carry out. The status of retirees who began service before the enactment of the statute is less clear. The plaintiffs have alleged that the government, aware that pay in the military was less than in the civilian sector, offered free medical benefits to retirees as an inducement for making service in the military a career. The plaintiffs have also alleged that the provision of such benefits to retirees for many years is evidence of an implied contract. Because the plaintiffs have alleged the elements of an implied contract, and the legal status of medical benefits for retirees before 1956 predates the adoption of Section 1074, the defendants' motion to dismiss the plaintiffs' contractual claim under the Little Tucker ACT is DENIED as to plaintiffs who began their service or made service career decisions prior to the enactment of Section 1074. Both plaintiffs seemingly are within this category.

To the extent that the plaintiffs have intermingled equitable estoppel arguments with their implied contract claim, those arguments must fail. The Supreme Court of the United States has severely restricted the use of estoppel doctrines against the United States government. *See Office of Personnel Management v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) (considering use of equitable estoppel).

In *Richmond,* a retired military employee appealed from a decision of the Merit Systems Protection Board that ruled him ineligible for disability annuity payments during the period in which his income exceeded the statutory level. The Supreme Court held that payments of money from the federal treasury were limited to those authorized by statute, and that erroneous advice given to the plaintiff by a government employee did not estop the government from denying benefits not otherwise permitted by law. *Richmond,* 496 U.S. at 434, 110 S.Ct. at 2475–76. While the Court declined to adopt a flat rule that estoppel could never run against the government, the Court held that "judicial use of the equitable doctrine of estoppel cannot grant [plaintiff] a money remedy that Congress has not authorized." *Id.* at 426, 110 S.Ct. at 2472. The Court noted that not one of its cases had upheld an estoppel claim against the government for the payment of money. *Id.* at 427, 110 S.Ct. at 2473. The Court stated that while inequitable situations might result, "Congress may always exercise its power to expand recoveries for those who rely on mistaken advice should it choose to do so." *Id.* at 428, 110 S.Ct. at 2474. "In numerous other contexts where Congress has been concerned at the possibility of significant detrimental reliance on the erroneous advice of Government agents, it has provided appropriate legislative relief." *Id.*

Here, the principles of estoppel must be considered in light of the nature of the benefits in dispute. Military benefits are distributed at the discretion of Congress, and are considered to be noncontractual. *See Lynch v. United States*, 292 U.S. 571, 577, 54 S.Ct. 840, 842, 78 L.Ed. 1434 (1934). "Such noncontractual benefits may be redistributed or withdrawn at any time in the discretion of Congress." *See also Zucker v. United States*, 758 F.2d 637, 638 (Fed.Cir.), *cert. denied*, 474 U.S. 842, 106 S.Ct. 129, 88 L.Ed.2d 105 (1985); *Milliken v. Gleason*, 332 F.2d 122, 123 (1st Cir.1964), *cert. denied*, 379 U.S. 1002, 85 S.Ct. 723, 13 L.Ed.2d 703 (1965). Assuming that someone within the military services promised the plaintiffs free medical care following their retirement, such a promise is insufficient in the context of military benefits to constitute an estoppel against the United States. Instead, "courts have consistently refused to give effect to government-fostered expectations that, had they arisen in the private sector, might well have formed the basis for a contract or an estoppel." *Kizas v. Webster*, 707 F.2d 524, 535 (D.C.Cir.1983), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984). *See Hoffman v. City of Warwick*, 909 F.2d 608, 616–617 (1st Cir.1990); *Kania v. United States*, 227 Ct.Cl. 458, 650 F.2d 264, 268 (1981); *Shaw v. United States*, 226 Ct.Cl. 240, 640 F.2d 1254, 1260 (1981).

In the area of military benefits, it is apparent that Congress is the appropriate body to establish and change benefits. As a result, at least after Section 1074 was adopted in 1956, promises regarding medical benefits were necessarily beyond the armed services' authority, and were not binding on the government. *See Office of Personnel Management v. Richmond*, 496 U.S. 414, 419, 110 S.Ct. 2465, 2468–69, 110 L.Ed.2d 387 (1990). While the Court in *Richmond* recognized the potential hardships that could be worked on military personnel relying on such promises, the Court made it clear that Congress is the appropriate body to provide legislative relief in situations characterized by detrimental reliance. *Id.* at 428–30, 110 S.Ct. at 2473–75.

### D. *Fifth Amendment*

Plaintiffs contend that free post-retirement medical care is part of the deferred compensation that they bargained for upon entering the military and, therefore, is a vested property right, irrespective of the provisions of Title 10, United States Code, § 1074(b). According to the plaintiffs, requiring retirees over the age of 65 to use Medicare for their health care needs is a retroactive reduction of their rights, and they are entitled to the benefit of their implied contract.

Several courts have held that "preferences or benefits conferred upon veterans do not give rise to compensable property rights." *Hoffman v. City of Warwick*, 909 F.2d 608, 616 (1st Cir.1990). *See Zucker v. United States*, 758 F.2d 637 (Fed.Cir.), *cert. denied*, 474 U.S. 842, 106 S.Ct. 129, 88 L.Ed.2d 105 (1985); *Kizas v. Webster*, 707 F.2d 524, 539 (D.C.Cir.1983); *Milliken v. Gleason*, 332 F.2d 122, 123 (1st Cir.1964) ("[V]eterans' benefits are gratuities and establish no vested rights in the recipients so that they may be withdrawn by Congress at any time and under such conditions as Congress may impose."), *cert. denied*, 379 U.S. 1002, 85 S.Ct. 723, 13 L.Ed.2d 703 (1965). Congress has now defined the rights of retired military personnel to medical care in Title 10, United States Code, Section 1074. *See Lord v. United States*, 2 Cl.Ct. 749, 756 (Cl.Ct.1983) (under statute, retired member of uniformed service is not entitled to medical care as matter of right). To have a property interest in a benefit protected by due process, a plaintiff must have a legitimate claim of entitlement to the benefit, and not just a unilateral expectation of it. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972).

The difficulty here is that the defendants have not shown that Congress took any role as to the medical benefits of retirees before 1956. The amended complaint alleges that the benefits were the subject of an implied contract between the plaintiffs and the government. It is clear that the enactment of a statute reducing benefits does not constitute a taking without compensation where the benefits are noncontractual in nature. *See, e.g., Jones v. Reagan*, 748 F.2d 1331, 1339 (9th Cir.1984) (statute terminating right of disabled merchant seaman to free

medical care in government facilities did not constitute taking without compensation; hospital care was noncontractual benefit). However, where the government takes legislative action that impairs a contract to which it is a party, the impairment of such contractual rights may be protected in some cases by the Fifth Amendment. *See Lynch v. United States,* 292 U.S. 571, 580, 54 S.Ct. 840, 844, 78 L.Ed. 1434 (1934) (invalidating legislation repudiating the government's obligation to pay war risk insurance benefits to veterans); *Larionoff v. United States,* 533 F.2d 1167 (D.C.Cir.1976) (entitlement of plaintiffs to veterans reenlistment bonuses not impaired by statutory repeal of bonus enlistment program), *aff'd,* 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977). Since the plaintiffs claim an implied contractual vesting of their asserted retirees' benefits prior to 1956, the defendants' motion to dismiss the plaintiffs' claim under the Fifth Amendment is DENIED.

### E. *Age Discrimination*

The plaintiffs allege that the defendants discriminated against them on the basis of their age when the plaintiffs were excluded from coverage under the Tricare program. According to the plaintiffs, since the Tricare program excluded military retirees over the age of 65 from military hospitals, the plaintiffs were forced to have money deducted from their Social Security benefits to utilize and pay for Medicare Part "B". While the plaintiffs have alleged several bases for their age discrimination claim, their claim is most appropriately considered either as a claim under the federal Age Discrimination in Employment Act ("ADEA") [29 U.S.C. §§ 621–32], or as a constitutional claim of age discrimination under the Fifth Amendment to the United States Constitution.

■ The ADEA prohibits discrimination in public and private employment against individuals who are at least 40 years of age. Discrimination in federal employment is addressed in Title 29, United States Code, Section 633a(a), which provides that as to certain federal agencies, all personnel actions affecting employees or applicants for employment who are at least 40 years of age "shall be made free from any discrimination based on age." The language of the statute apparently restricts usage to current employees of government agencies or applicants for employment with such agencies. However, in the context of the Title VII retaliation statute, the term "employee" has been interpreted as including former employees. *See Robinson v. Shell Oil Co.,* 519 U.S. ——, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). The term "employee" under the ADEA may include retired employees challenging an allegedly discriminatory pension plan. *See McKeever v. Ironworker's District Council,* 1997 WL 109569 (E.D.Pa.1997). While it is debatable whether the ADEA is applicable in the present case, I will assume for purposes of further analysis that the ADEA applies.

■ Under the ADEA, a federal employee who believes that he has been discriminated against on the basis of age may proceed through two alternative avenues of relief. 29 U.S.C. § 633a(d). The employee may file a formal complaint with the Equal Employment Opportunity Commission ("EEOC"), and if denied relief, file a civil action. Alternatively, the employee can proceed directly to district court. The aggrieved employee must, however, give notice not less than thirty days before suit to the EEOC of an intent to sue, and this notice must be filed with the EEOC within 180 days of the alleged unlawful practice. Where a plaintiff fails to meet these requirements, his suit must be dismissed. *See Tiltti v. Weise,* 1997 WL 73698 (S.D.N.Y. 1997); *Metsopulos v. Runyon,* 918 F.Supp. 851 (D.N.J.1996); *Zellars v. Liberty Nat. Life Ins. Co.,* 907 F.Supp. 355, 359 (M.D.Ala.1995). Here, the plaintiffs neither exhausted their administrative remedies nor gave the EEOC notice with respect to the age-related violations alleged in the complaint. As a result, the claim of age discrimination, if construed as arising under the ADEA, must be dismissed.

■ The plaintiffs' claim can also be interpreted as an equal protection claim under the Fifth Amendment based on a theory of age discrimination. Under such a theory, the proper standard of review is the rational basis standard. *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 312–14, 96 S.Ct. 2562, 2566–67, 49 L.Ed.2d 520 (1976). *See Spain v. Ball,* 928 F.2d 61, 63 (2d Cir.

1991); *Muller v. Lujan,* 928 F.2d 207, 210 (6th Cir.1991). Under the rational basis standard, the challenging party bears the heavy burden of demonstrating that the legislation at issue is irrational. *Muller v. Lujan,* 928 F.2d at 210. The plaintiff "must convince the court that the legislative facts on which the classification apparently is based could not reasonably be conceived to be true by the government decision maker." *Vance v. Bradley,* 440 U.S. 93, 111, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979). Here, the plaintiffs' burden is further increased by the strong presumption of constitutionality that applies to economic legislation. *See Schweiker v. Wilson,* 450 U.S. 221, 238, 101 S.Ct. 1074, 1084, 67 L.Ed.2d 186 (1981). Whether a rational basis exists is a question of law for the court to determine. *Izquierdo Prieto v. Mercado Rosa,* 894 F.2d 467, 471 (1st Cir. 1990).

Tricare, a regionalized managed care program, was designed by the Department of Defense to reduce costs for the military hospital system and the CHAMPUS program. H.R. REP. NO. 103–601(111), 103rd Cong., 2nd Sess. (1994). Tricare was intended to make more efficient use of military medical resources and thereby achieve cost savings. *Id.;* H.R. REP. NO. 103–200, 103rd Cong., 1st Sess. (1993), U.S.Code Cong. & Admin.News 1993, 2013. *See* 32 C.F.R. § 199.17. "Unfortunately, the same option to obtain maximum return on Federal Government health care dollars does not exist in the case of the Medicare-eligible retiree population because, under current law, Medicare does not reimburse for health care services provided by other Federal agencies." H.R. REP. NO. 103–601(111), 103rd Cong., 2nd Sess. (1994). It was apparently on the basis of this understanding that Congress specified that retirees who qualify for Medicare are not eligible for benefits under CHAMPUS or Tricare. 10 U.S.C. § 1086(d). Congress specifically provided that the Secretary of Defense would arrange for an on-going evaluation of the effectiveness of the Tricare program, with the evaluation specifically addressing the impact of the program on military retirees with regard to access, costs, and quality of health care services. Pub.L. 104–106, Div. A., Title VII, § 717, 110 Stat. 376 (Feb. 10, 1996).

The statutory scheme in question clearly excludes those military retirees over age 65 from the Tricare program. The legislative history indicates that Congress made the decision to exclude such retirees from the program on the basis of its understanding that inclusion would not result in any reduction of costs. Congress could rationally make the legitimate judgment that Tricare could best perform its purpose of reducing costs for the military health care system if retirees eligible for Medicare were not included. It cannot be said that the legislative facts on which the classification is based could not reasonably be conceived to be true by Congress. Plaintiffs cannot meet their burden of demonstrating that the legislation in question is irrational. For that reason, the plaintiffs' constitutional claim of age discrimination must be dismissed.

### III. *Conclusion*

For the reasons discussed above, the defendants' motion to dismiss is GRANTED, in part, and all claims in the amended complaint are DISMISSED, except for the deprivation of property claim under the Fifth Amendment (for non-monetary relief) and the breach of contract claim under the Little Tucker Act. The motion is DENIED as to those two claims, and the case will continue on those claims only.